PAINE v. GRIFFITHS et al.

(Circuit Court of Appeals, Third Circuit. April 4, 1898.)

No. 19.

1. CONTRACT—GRANT OF MINING LANDS—ABANDONMENT OF PART.

The plaintiff's grantor, for the purpose of developing the mineral wealth in his vicinity, conveyed to the plaintiff all the mineral, coal, iron ore, petroleum oil, and salines in, upon, and under a certain tract of land, with the

right to mine and remove the same, and construct necessary buildings thereon, the plaintiff agreeing to develop the mines, and pay his grantor a stipulated sum annually. The grant to plaintiff contained a clause permitting him "to abandon the said lands and mining at any time, and remove buildings and fixtures." *Held* that, if the plaintiff abandoned the lands and mining, his title to the minerals, and all other rights conferred by the contract, terminated.

**2.** Same.

The grantee, having done nothing under the contract for a period of more than 20 years after its execution, must be considered as abandoning it, and his claim to the minerals nothing more than a cloud on the title of his grantor or assignees.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

A. Leo Weil, for plaintiff in error.

M. F. Elliott, for defendants in error.

Before DALLAS, Circuit Judge, and BUTLER and BRADFORD, District Judges.

BUTLER, District Judge. The plaintiff's title rests upon the following agreement:

"Made and concluded this 3d day of May in the year of our Lord one thousand eight hundred and sixty-seven. Between George Whitesell, of Hampton township in the county of Allegheny in the state of Pennsylvania, party of the first part and Almon Rainey and O. D. Paine of Youngstown, in the county of Mahoning in the state of Ohio, party of the second part, as follows:

"The said party of the first part for the consideration of one dollar to him in hand paid as well as the agreements hereinafter mentioned does hereby bargain, sell and convey to the party of the second part, his heirs and assigns, all the mineral, coal, iron ore and other minerals and all rock or petroleum oil and salines in, upon and under the farm or tract of land in the township of Hampton in the county of Allegheny in the state of Pennsylvania bounded and described as follows:

"On the north by land of A. Watson & Mury heirs, on the east by land of Mury heirs, on the south by land of A. Watson, on the west by land of Joseph Moon. Containing two hundred and seventy (270) acres of land, granting to the party of the second part or his assigns, as well as his and their laborers and workmen, the exclusive right to enter upon said lands at any time hereafter and search for coal, iron ore and all other minerals, oils and salines and when found to remove the same from said lands, together with all the rights and privileges incident to the mining and securing said coal, iron ore and other minerals, oils and salines including the right of ingress and egress and to dig, mine, explore and occupy with such construction and buildings as may be necessary and useful for the full enjoyment of the advantages of said coal, iron ore and other minerals, oils and salines and with the refuse from said mines and also the right to mine and remove the coal, iron ore and other minerals, oils and salines from other lands, through, over or under said lands.

"And the party of the second part agrees by himself, his assigns and workmen to make search for coal, iron ore and other minerals, oils and salines upon the lands above described, and should he find coal, iron ore or other minerals or oils or salines in said lands and other lands of sufficient thickness, quantity and quality to justify him, the party of the second part, in his opinion to open and work said mines or oils or salines then he or his representatives or assigns shall pay to the party of the first part, his heirs or assigns, within three years after the completion of a railroad built in connection with any leading railroad by which said minerals or oils can be taken to any large markets the sum of twenty dollars a year, and the party of the second part shall have the right to abandon said lands and mining at any time and remove all his buildings and fixtures from said lands. And it is further agreed upon by the parties to this

contract that if the party of the second part shall fail to construct or cause to be constructed the railroad herein contemplated within five years from the date of this contract the party of the second part shall pay to the party of the first part the above-named sum of twenty dollars a year thereafter until said railroad is completed or mining is commenced on said premises. And a further consideration of this contract is to induce capitalists to develop the mineral wealth of this section in the county of Allegheny and state of Pennsylvania. And the said party of the second part by himself or assigns agrees to pay to the party of ·the first part, his heirs, legal representatives, or assigns the sum of ten (10) cents for each ton (of 2,240 pounds) of screen coal mined and removed from said lands herein described, and the price or rent of the iron ore and limestone mined and removed from said lands for such gross ton of 2,240 pounds shall be ten cents for screened or cleaned ore and limestone and the price or rent for rock or petroleum oil shall be ——, and saline ——. But it is understood and agreed that any advance payments that shall be made to the party of the first part are to apply to the payment of rents of coal, iron ore or other minerals or oils first named thereafter, the payment of rent per ton on coal, iron ore and other minerals, oils and salines mined and removed shall be made half yearly and all payments required by this agreement shall be made and accepted in bankable funds of the state of Pennsylvania. It is mutually understood by the parties that the coal and ore under any dwelling house or other permanent buildings now upon the premises shall not be mined out and as little injury to the surface of said land shall be done as possible in the mining, removing and transportation of said coal and ore, oils and all other minerals as herein contemplated.

"It is further understood and agreed upon as a part of this contract that the party of the first part hereby grants and gives to the party of the second part all the land necessary in the above-described premises for location, construction and occupancy of a public railroad as above contemplated together with lateral branches. It is also mutually understood that the stipulation herein contained shall apply to and bind the heirs, executors, administrators and assigns of the parties respectively.

"In witness whereof the parties has hereunto set their hands and seals, the day and year first above written.      George Whitesell.      [Seal.]
                                                           "Almon Rainey.      [Seal.]
                                                           "O. D. Paine.       [Seal.]

"Signed, sealed and delivered in the presence of
    "Robert Hardy.
    "Martha A. Orr."

The main question is: how should this contract be interpreted? The court below, without determining whether it created a grant of the minerals, or a lease of them, held that the provision for abandonment related to the entire interest transferred to Rainey and Paine, and instructed the jury to find for the defendant if it appeared that Rainey and Paine and their assigns, had abandoned the property. To this view of the contract, and the manner of submitting the question of abandonment, the plaintiffs excepted.

It may not be important to determine whether the contract constituted a grant, or merely a lease; as the result would probably be the same in either case, under the laws of Pennsylvania. If a lease, it would not be terminable at the will of the lessor, as the defendant urges. Lewis v. Effinger, 30 Pa. St. 281; Id., 32 Pa. St. 367. It seems clear however, that the interest transferred was a grant of the minerals; not absolute, but conditional. The grantees were expressly authorized to abandon the property and thus terminate their obligations, as well as their interest. The provision was not inserted for their benefit alone, but as well for the grantor's. This is too manifest to justify discussion. His object was the development and utilization of his land. If therefore the grantees abandoned the property the grantor was to be remitted to his

former condition. The plaintiffs' interpretation of the clause, and of the agreement generally, is inadmissible. It divorces the grant from the obligations on which it rests, and thus makes the former absolute, and the latter independent covenants; thus allowing the grantees to retain the minerals while disregarding and abandoning the obligations on which the right to them depends. The terms of the clause itself—which are that "the party of the second part shall have the right to abandon the said lands and mining at any time and remove buildings and fixtures"—forbids this interpretation. If it were possible to construe the language so as to make it relate to the mining operations alone, and thus allow the grantees to withdraw from them and still retain the minerals, the court would be reluctant to do it, and thus defeat the manifest object of the grantor. But it is not possible. The term "land" accurately describes the mineral right granted. Kier v. Peterson, 41 Pa. St. 357; Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. St. 173; Glasgow v. Gas Co., 152 Pa. St. 148 [25 Atl. 232]. It is not merely the mining operations therefore, that are subject to abandonment, but the mining right as well. Consequently if the grantees elect to take advantage of the clause their act terminates not only their right to operate mines upon the premises, but all other rights conferred by the contract. The court's interpretation cannot therefore be complained of.

Is its submission of the question of abandonment liable to just criticism? It is unnecessary to notice the numerous assignments of error separately. Those relating to the construction of the contract, and the answer to points touching that subject, are covered by what has been said. The first, fifth, sixth, seventh, twelfth and fifteenth, relate to the question now under consideration. A careful examination of these assignments has not convinced us that any error was committed, calculated to prejudice the defendant. It is easy in most cases to render a charge subject to adverse criticism by cutting it in pieces and considering the parts separately. The question however is whether the charge, taken as a whole, and as the jury should have understood it, was unjust to the plaintiff. Here the inquiry whether the evidence proves the alleged abandonment, was fairly submitted, and the jury's attention called to the main features of the testimony on which its decision rests. It is probable the court would have been justified in saying that if the jury should find that the grantees and their assigns did, substantially, nothing under the agreement, for the period which elapsed between its date and the subsequent lease to Griffiths—more than 20 years—it should find an abandonment. While the question is one of intention mainly, its decision does not depend upon an intention to abandon or retain the mineral right alone, divorced from the obligations which adhere to it under the contract, but intention to abandon the contemplated enterprise. Evidence therefore of transfer, or attempts to transfer, this right, as matter of mere speculation, was entitled to no weight in the presence of proof that nothing further was done or intended to be done; and that the obligations on which the grant rests were disregarded and abandoned. Surely the transaction between Griffiths and Allen was entitled to no con-

sideration. More than 20 years had then elapsed since the grant to Rainey and Paine, and nothing whatever, of consequence, had been done under the agreement. Griffiths had recently obtained an oil right in the land, and was about to commence work. Hearing accidentally of this agreement he went to Allen, who held a supposed interest under it, and paid him something, to avoid danger thereafter. The court referred to the claim of Allen as a mere cloud on Griffiths' title. Certainly it was no more. The evidence of abandonment at that time was ample to justify and require a jury to find the fact. Neither Allen, nor anybody else claiming under the agreement, could breathe new life into the grant; it was dead and could not be resurrected. Nevertheless he was in a position to demand something, and Griffiths in a situation that justified the payment of something, to insure peace. The plaintiffs say however, the court was inconsistent with itself, that while undertaking to submit the question it decided it. We do not think the criticism is just when the entire charge is considered. The court doubtless meant to be understood as saying that Griffiths regarded Allen's claim as a mere cloud. If the court had said this transaction is of no consequence, in case abandonment had previously occurred, that Allen's claim under such circumstances, was a mere cloud on Griffiths' title, the statement would have been strictly accurate. The expressions complained of however could do no harm; not only because they were unlikely to be understood as the plaintiffs construe them, but also because the facts on which the question of abandonment depends are free from question, and fully warranted the court in leading the jury to the conclusion reached, if they did not even call for binding instruction, as before indicated. In Atchison v. McCulloch, 5 Watts, 13, the court said:

"Abandonment is not always a question of intention exclusively for the jury, without a controlling instruction from the court. Under a certain uncontradicted state of facts the law will pronounce the conduct of a party to be an abandonment, whatever may have been his intention."

For these reasons the judgment must be affirmed.