## Warren Oil & Gas Company, et al. v. Gilliam.

(Decided January 21, 1919.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Oil and Gas Leases—Forfeiture.—Under an oil and gas lease, whereby the lessee agreed to begin a well on the premises within one year, "or pay at the rate of 25c an acre per year, for each additional year such beginning is delayed," the lessor was not entitled to forfeit the lease for the failure to develop the premises until he first demanded that the lessee begin the development and gave him a reasonable time in which to do so.

2. Mines and Minerals—Oil and Gas Leases—Rent—Payment—Time. —In such a lease where no operations were begun the second year, the tender of the stipulated rental in the manner provided by the contract, before the expiration of the second year, was in time to avoid a forfeiture.

3. Mines and Minerals—Oil and Gas Leases—Subsequent Leases— Invalidity.—Where the same lands are covered by a prior oil and gas lease, that is valid and in force, a subsequent lessee of the same lands for the same purposes, with both actual and constructive notice of the prior lease, acquires no rights as against the prior lessee.

4. Mines and Minerals—Oil and Gas Leases—Subsequent Leases— Relief.—The owner of an oil and gas lease is entitled to have his title to the oil and gas quieted as against the owner and the subsequent lessee with notice, and to have them enjoined from interfering with his right to enter on the land and remove the oil.

SIMS, RODES & SIMS for appellants.

NOEL & HARPER and GILLIAM & GILLIAM for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

On February 29, 1916, Festus Stark executed to Rupert Huntsman a lease on thirty acres of land located in Allen county, for the sole purpose of mining and operating for oil and gas therein. The consideration was seventy-five cents cash and the covenants and agreements contained in the lease. The term was five years, and as long thereafter as oil or gas was produced by the lessee, his successors or assigns. The agreed royalty was one-eighth of all oil produced and saved from the leased premises.

The material provisions of the lease are as follows:

"The party of the second part agrees to begin a well on said premises within one year from the date hereof, or pay at the rate of 25c an acre per year for each additional year such beginning is delayed from the time above mentioned for the beginning of such well until a well is commenced. The above rental shall be paid to the parties of the first part in person or by check to their order, deposited in the P. O. by registered letter to their address at Settle, Ky., or deposited or mailed to their credit in the First National Bank at Scottsville, Ky.; and it is agreed that the beginning of said well shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of lease.

"It is agreed that unless said well is completed or the rental paid as hereinbefore stipulated, this lease shall be and become null and void and of no further force and effect."

On March 4, 1916, Huntsman assigned the lease to W. D. Gilliam, who is now the owner thereof. The lease was recorded in the Allen county clerk's office on October 27, 1917.

On December 19, 1917, Stark executed another lease to the Warren Oil & Gas Company. Prior to the execution of the latter lease, Stark had requested Gilliam to pay the stipulated rental. Gilliam took the position that the rental was not due. However, on February 23, 1918, and before the second year of the lease had expired, Gilliam sent his check to Stark for $7.50, the amount of the agreed rental for the year 1917, which sum Stark refused to accept on the sole ground that he had leased the oil and gas privileges to the Warren Oil & Gas Company.

The latter company had both constructive and actual notice of the prior lease to Gilliam.

This suit was brought by Gilliam against the Warren Oil & Gas Company and Stark to quiet his title to the lease which he owned, and to enjoin the defendants from entering on the land and interfering with his rights. The latter defended on the ground that Gilliam's lease had been forfeited not only because he failed to develop the property, but because he failed to pay the stipulated rental in advance. On final hearing Gilliam was granted the relief prayed for and the defendants appeal.

It will be observed that the lease in question provides that the lessee was to begin a well on the premises within one year from the date of the lease, or pay at the rate of 25c an acre per year for each additional year such beginning was delayed. In construing such leases, we have taken the position that the main consideration is the development of the property, and the payment of the royalty, and that the lessee cannot, in opposition to the wishes of the lessor, refuse to begin the development of the property for an unreasonable time, and extend the lease indefinitely by the payment of a mere nominal rent. Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602, 99 S. W. 668; Dinsmoor v. Combs, 177 Ky. 470, 198 S. W. 59. However, the right of the lessor to forfeit the lease for non-development cannot be arbitrarily exercised. He must first notify the lessee that he will no longer accept the annual rentals and permit his land to remain idle and undeveloped, but will require the lessee to execute the contract according to the intention of the parties by beginning its development in good faith, and if, after such notice and demand, the lessee does not begin the development within a reasonable time, the lessor may then have the lease forfeited. Monarch Oil, Gas & Coal Co. v. Richardson, *supra*. Here, the lessor did not, at any time, demand that the lessee begin operations and give him a reasonable opportunity to do so. That being true, there is no basis for the contention that the lease in question was forfeited because of the lessee's failure to begin operations.

Equally without merit is the contention that the lease in question was forfeited because of the lessee's failure to pay the stipulated rental in advance. Under the lease in question, the stipulated rental was not payable for the first year, but only for each additional year the begin-

ning of operations was delayed. There is nothing in the contract from which it can be inferred that the rental was payable in advance. In construing a similar lease in the case of Dix River Barytes Co. v. Pense, 123 S. W. 263, we held that where no operations were commenced during the second year, the stipulated rental was not due until the end of that year. That being true, the tender of the rental for the second year before the end of that year, in the manner provided by the contract, was sufficient to avoid a forfeiture.

Since plaintiff's lease was valid and in force, it necessarily follows that defendants, who had both actual and constructive notice of plaintiff's lease, acquired no rights under their lease as against plaintiff. Hence, the chancellor properly adjudged that plaintiff had the right to have his title to the oil and gas under the leased land quieted as against the defendants, and to have them enjoined from interfering with his right to enter on the land and remove the oil. Kahle v. Crown Oil Company, 180 Ind. 131, 100 N. E. 681.

Judgment affirmed. Whole court sitting.