## Hughes, et al. v. Parsons.

(Decided March 11, 1919.)

## Appeal from Jackson Circuit Court.

1. Landlord and Tenant—Lease—Oil.—A lease of land for five years, or longer if found profitable, for the purpose of drilling for oil and gas, made for the recited consideration of $1.00, cash in hand paid, and certain royalties on the oil or gas produced, and which provides that the lessee shall begin operations within a year and, in the event of his failing to do so, that he shall pay during the period of delay an annual rental of twenty-five cents per acre on the land, is not a unilateral contract.

2. Landlord and Tenant—Lease—Oil.—The main consideration to the lessor for the making of such a contract is the development of the property and payment to him of the promised royalty, and to the lessee it is the profits to be realized from the development of the property. Consequently the contract does not permit the lessee, in opposition to the wishes of the lessor, to delay the development of the property for an unreasonable time and thereby extend the lease indefinitely by the payment of a nominal annual rental. In case of unreasonable delay by the lessee in beginning operations under the lease after the first year, the remedy of the lessor is to notify the lessee that he will not accept further payment of the annual rental and permit his land to remain idle, but will require the lessee to at once begin, in good faith, performance of the contract; and if after such notice and demand, the lessee does not begin the development of the property within a reasonable time, the lessor may have the lease forfeited, resorting to a court of equity for that purpose.

3. Landlord and Tenant—Lease.—Evidence examined and held insufficient to show that the lease sought to be cancelled was obtained by fraud on the part of the lessee.

A. W. BAKER for appellants.

J. R. LLEWELLYN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In this action, brought in the court below by appellants, H. C. Hughes and Euphemia Hughes, his wife, against the appellee, G. M. Parsons, the relief sought was the cancellation of an oil and gas lease executed by appellants to one C. W. Hundley June 5, 1916, and assigned by the latter to the appellee, G. M. Parsons January 17, 1917. The lease conveyed to the lessee and his assigns the right to drill for and remove all oil and gas upon and under a tract of land lying in Jackson county, described

in the lease, for a period of five years and as much longer as oil and gas is found thereon. The grounds alleged in the petition for the cancellation of the lease were: (1) that the contract is unilateral in form and character and therefore void for want of mutuality; (2) that it was procured by fraud and, for that reason, is also void. The averments of the petition were traversed by the appellee's answer and the parties took proof. On the hearing the circuit court dismissed the appellants' petition. The latter complain of that judgment and have appealed.

Because of its great length the lease is not copied in the opinion, but its material features are as follows: (1) It conveys to the lessee the right to enter the land described therein and drill for and remove therefrom oil or gas for a period of five years from the date of the lease, and as much longer thereafter as oil and gas are found thereon, with the right to the use of oil, gas, or water therefrom and all rights and privileges necessary or convenient for such operations; also the right to remove at any time all property, pipes and improvements placed or erected in or upon the land by the lessee; (2) it requires the lessee to drill a well upon the premises within one year from the date of the lease, or to thereafter pay to the lessors quarterly a yearly rental of 25 cents per acre, in advance, until a well is completed or the property leased reconveyed to the lessors; (3) that should oil be found in paying quantities the lessee will deliver to the lessors free of charge into tanks or pipe lines one-eighth part of all crude oil produced or saved from the premises; and should gas be found in paying quantities that the lessee will pay the lessors $100.00 every year for the product of each well while the same is being sold off the premises, the lessor to have gas free of cost to heat and light one dwelling house during the same time at the well, to be used at the lessors' risk; (4) that the lessee would bury pipe lines for oil in cultivated fields below plough depth when requested to do so, and pay for damage done growing crops while drilling; (5) that the lessee may at any time remove all his property and reconvey the premises granted, in which event such payments as may have been made the lessors during the continuance of the lease are to be retained and accepted by them as the full stipulated damages for nonfulfillment of any part of the contract by the lessee. In addition to

the matters above set out as parts of the consideration passing from the lessee to the lessors for the conveyance, it is recited in the beginning of the lease that it is made in consideration of $1.00, paid the lessors by the lessee, the receipt of which is acknowleded.

The appellants rest their right to the relief sought on the opinion of this court in Killabrew v. Murry, 151 Ky. 345. But it will be found that the phosphate lease in that case differs in several essential particulars from the lease in the instant case. In that case the stipulated life of the lease was ten years, with the right to the lessee to extend it on certain conditions of which he was to be the sole judge. The writing was silent as to when the lessee should begin operations upon the leased premises, and left it to his election whether he would do so in ten years or at all, only requiring of him when he did begin a grossly inadequate royalty on the phosphate mined; and until he did begin operations, the payment of an inadequate sum annually by way of rent to the lessor without fixing any time for its payment. In addition, the $1.00, mentioned in the beginning of the writing as the primary consideration for the lease, was never paid by the lessee and only one payment of rent was made by him, although three and one-half years of the lease had expired without his beginning operations thereunder before the lessor demanded of him its forfeiture, together with the surrender of the possession of the leased premises, and notified him of her purpose to sue for the cancellation of the lease. It was held that the contract was so lacking in reciprocity of obligation as to leave it wholly to the option of the lessee whether or not he would carry out the object of the lease, and at the same time render the lessor powerless to compel the performance of any of its covenants by him, which made the lease a unilateral contract and for that reason void.

There was, however, in Killabrew v. Murry, another and even stronger cause than its unilateral character, that moved us to adjudge the lessor entitled to the cancellation of the lease, viz: the fraud practiced by the lessee in procuring its execution. In other words, it was clearly established by the evidence that the lessor was induced to execute the lease for a grossly inadequate royalty of 25 cents per ton on the phosphate to be mined, upon the representation of the lessee that such was the customary price paid under similar leases in Tennessee, when in

fact the customary royalty in Tennessee at that time was $1.00 to $1.10 per ton, instead of $0.25 per ton, which was known to the lessee but not known to the lessor at the time the lease was executed. On this showing of facts we held that the falsity of the representation thus made by the lessee was of itself sufficient to authorize the cancellation of the lease.

From what has been said of the lease involved in Killabrew v. Murry, *supra,* and that in the instant case, it will be seen that though there are some features of slight resemblance between them, in the features or matters essential to the validity of such a lease, they are greatly unlike both in language and meaning. Without further comparisons of the two leases it is sufficient to say that the opinion in Killabrew v. Murry gives no support to the attack here made by appellants on the lease they executed to appellee. On the other hand it may be remarked that the lease here assailed is in terms and meaning like numerous others that both before and since the decision in Killabrew v. Murry have been declared valid. The most recent of these is the lease involved in Warren Oil and Gas Co., et al. v. Gilliam, 182 Ky. 807, the covenants of which are so substantially like those of the lease we are here considering that the language is almost identical. In that lease as in this the term was five years and as long thereafter as oil or gas was produced by the lessee or assigns. The consideration was 75 cents cash and the covenants of the lease; the agreed royalty was one-eighth of all oil and gas produced and saved on the leased premises. The lessee agreed to begin a well on the premises within one year or pay at the rate of 25 cents an acre per year, for each additional year such beginning is delayed; and further that unless the well was completed or rental paid as stipulated the lease should become null and void. Shortly thereafter the lessee assigned the lease to Gilliam, who failed to begin the well within the year stipulated. The lessor then undertook to treat the lease as forfeited and executed another similar lease to a different party. Thereupon Gilliam brought the action asking an injunction against the new lessee restraining him from interfering with his (Gilliam's) possession of the leased premises and asking that his title to same be quieted. The circuit court granted Gilliam the relief asked and on appeal to this court the judgment was affirmed. In the opinion we, in part, said: "It will be ob-

served that the lease in question provides that the lessee was to begin a well on the premises within one year from the date of the lease, or pay at the rate of 25 cents an acre per year for each additional year such beginning was delayed. In construing such leases, we have taken the position that the main consideration is the development of the property, and the payment of the royalty, and that the lessee cannot, in opposition to the wishes of the lessor, refuse to begin the development of the property for an unreasonable time, and extend the lease indefinitely for the payment of a mere nominal rent. Monarch Oil, Gas and Coal Co. v. Richardson, 124 Ky. 612; Dinsmoor v. Combs, 177 Ky. 470. However, the right of the lessor to forfeit the lease for non-development cannot be arbitrarily exercised. He must first notify the lessee that he will no longer accept the annual rentals and permit his land to remain idle and undeveloped, but will require the lessee to execute the contract according to the intention of the parties by beginning its development in good faith, for if, after such notice and demand, the lessee does not begin the development within a reasonable time, the lessor may then have the lease forfeited. Monarch Oil, Gas and Coal Co. v. Richardson, *supra*. Here, the lessor did not, at any time, demand that the lessee begin operations and give him a reasonable opportunity to do so. That being true, there is no basis for the contention that the lease in question was forfeited because of the lessee's failure to begin operations. Equally without merit is the contention that the lease in question was forfeited because of the lessee's failure to pay the stipulated rental in advance. Under the lease in question, the stipulated rental was not payable for the first year, but only for each additional year the beginning of operations was delayed. There is nothing in the contract from which it can be inferred that the rental was payable in advance. In construing a similar lease in the case of Dix River Barytes Co. v. Pense, 123 S. W. 263, we held that where no operations were commenced during the second year, the stipulated rental was not due until the end of that year. That being true, the tender of the rental for the second year before the end of that year, in the manner provided by the contract, was sufficient to avoid a forfeiture.''

While one or more of the grounds of attack made upon the lease in the instant case were not urged against the

lease in Warren Oil and Gas Co. v. Gilliam, the sameness of the two leases doubtless would have led to the statement in the opinion in the latter case of any cause for which the court, would have felt compelled to declare the lease a unilateral contract, and for that reason, or any other, void. As said in that case, if the appellee in this case unreasonably delays the beginning of operations upon the leased premises, in order to obtain a forfeiture of the lease, the remedy of the lessors will be to notify the lessee that they will not accept the stipulated annual rental and demand immediate performance of the covenants of the lease; and if the appellee does not begin performance, in good faith, within a reasonable time, they may then have the lease cancelled.

The opinion in Warren Oil and Gas Co., et al. v. Gilliam, *supra,* removes any doubt of the correctness of the judgment appealed from, unless the lease in question was obtained by fraud, as to which issue it seems sufficient to say that the alleged fraud does not appear to have been shown by the evidence. It is difficult to comprehend how appellants could have believed they were making the lease to the Wood Oil Co. through appellee, as claimed, when the name of the lessee Hundley was in the contract when they executed it, and with such knowledge they made no complaint of the alleged fraud until after Hundley assigned the lease to appellee. While there was some contrariety of evidence on the question of fraud, we are not prepared to say that the chancellor's decision of that question is not sustained by the evidence.

Finding no legal cause for disturbing the judgment. it must be and is affirmed.