KISTER OIL DEVELOPMENT CORPORATION v. YOUNG et al. (four cases). SAME v. YOUNG GASOLINE & REFINING CO. et al. SAME v. PETROLEUM EXPLORATION et al.

District Court, W. D. Kentucky. June 14, 1928.

Nos. 66–71.

1. Mines and minerals ⬩⟋58—Statutes relative to validity of oil leases, providing for rentals in lieu of drilling, held valid (Ky. St. 1922, §§ 3766b1c, 3766b2c).

Act Ky. March 8, 1920 (Acts 1920, c. 24) §§ 1, 2 (Ky. St. 1922, §§ 3766b1c, 3766b2c), invalidating oil and gas leases authorizing postponement of drilling by payment or tender of rentals on or before date fixed, if lessee fails to make such payment or tender, and validating leases providing rental clauses in event of failure to drill within given period, so long as rentals are paid or tendered as provided, is valid, so far as applicable to such leases executed after effective date of act.

2. Mines and minerals ⬩⟋79(1)—Statutes held to require literal enforcement of both "or" and "unless" oil leases providing for rentals in lieu of drilling (Ky. St. 1922, §§ 3766b1c, 3766b2c).

Act Ky. March 8, 1920 (Acts 1920, c. 24), §§ 1, 2 (Ky. St. 1922, §§ 3766b1c, 3766b2c), invalidating oil leases authorizing postponement of drilling by payment or tender of rentals, if not paid or tendered on or before date stipulated, and validating leases providing for payment of rental in event of failure to drill within given period, so long as such rentals are paid or tendered, *held* to require literal enforcement of both "or" and "unless" leases, subject to forfeiture provision of section 1, in view of contrary rule laid down by Kentucky Court of Appeals before enactment of such statutes.

3. Mines and minerals ⬩⟋79(6)—Oil lease must provide for drilling or payment of rental by fixed dates, and failure to pay rental must appear, to forfeit lease (Ky. St. 1922, § 3766b1c).

Under Act Ky. March 8, 1920 (Acts 1920, c. 24), § 1 (Ky. St. 1922, § 3766b1c), oil and gas lease must contain provisions for drilling within specified time, and payment of stipulated rental on or before stipulated date in event of failure to drill, and lessee's failure to pay or tender such rental on or before date fixed must appear, before lease can be forfeited.

27 F.(2d)—28

**4. Contracts ⊜147(1)—Contract must be construed to effectuate parties' intention, unless contrary to plain meaning of whole contract.**

Contract must be so construed as to effectuate the intention of the parties, unless such construction does violence to the plain meaning of the contract as a whole.

**5. Contracts ⊜147(2)—In effectuating intent, word in contract may be disregarded, or another substituted.**

In effectuating the parties' intention, a word in a contract may be disregarded, or another substituted therefor, if it is clear from the whole context that such word was used inadvertently.

**6. Mines and minerals ⊜79(1)—Oil lease, containing agreement to "commence" well within year, or pay rental for each year "such completion is delayed," required completion within year, or payment of rental annually thereafter until completion; "commence" being used inadvertently for "complete."**

Oil and gas lease, providing that lessee "agrees to commence a well * * * within one year from date hereof, or pay * * * 25 cents an acre for each additional 12 months such completion is delayed from the time above mentioned for the completion of such well until a well is completed," *held* to obligate lessee to complete well within year from such date, or pay such sum on or before same date each year thereafter, so long as well was not drilled; "commence" being used inadvertently, instead of "complete."

**7. Mines and minerals ⊜58—Oil leases held void under statute, where no well was completed nor rental paid within time stipulated (Ky. St. 1922, § 3766b1c).**

Oil and gas leases, obligating lessee to complete well within year or pay stated sum per acre for each year thereafter, so long as well had not been drilled, *held* void, under Act Ky. March 8, 1920 (Acts 1920, c. 24), § 1 (Ky. St. 1922, § 3766b1c), where no well was completed or commenced, nor any rental paid, though time stipulated for payment thereof expired long before execution of leases to other parties.

**8. Abandonment ⊜6—Abandonment is law question where facts are indisputable.**

Abandonment is ordinarily a question of fact, to be determined by the circumstances and intention of party against whom the plea is asserted, but becomes a question of law, where there is and can be no dispute about facts.

**9. Mines and minerals ⊜77—Lessee not completing well, paying rentals, taking physical possession of oil and gas, or occupying leased premises, abandoned oil and gas leases.**

Lessee, never completing or commencing well on leased premises, nor paying any rentals in lieu thereof, as required by oil and gas lease, from date thereof until execution of leases to other parties, and taking no physical possession of oil and gas, nor actually occupying premises, *held* conclusively presumed to have abandoned leases.

**10. Courts ⊜367(5)—Doctrine that oil leases convey interest in land, being rule of property in Kentucky, is binding on federal courts as to leases on land therein.**

Doctrine that oil and gas leases convey an interest in land, if not title to oil and gas in place, being a rule of property in Kentucky under decisions of Court of Appeals of that state, is binding on federal courts as to leases on land in Kentucky.

**11. Mines and minerals ⊜77—Land interest conveyed by oil lease, being conditional on reasonably prompt development, may be abandoned.**

Interest in land conveyed by oil and gas lease being a conditional one, dependent on reasonably prompt development of property, under decisions of Kentucky Court of Appeals, such interest, as distinguished from unconditional title in fee, may be abandoned.

In Equity. Suits by the Kister Oil Development Corporation against L. C. Young and others, the Young Gasoline & Refining Company and others, and the Petroleum Exploration and others. On motions to dismiss the bills. Motions sustained, with leave to amend.

Sandidge & Sandidge, of Owensboro, Ky., for plaintiff.

Floyd J. Laswell and R. Miller Holland, both of Owensboro, Ky., Robt. H. Winn, of Mt. Sterling, Ky., and E. C. O'Rear, of Frankfort, Ky., for defendants.

DAWSON, District Judge. In each of these cases the plaintiff, Kister Oil Development Corporation, claims to be the owner, by written assignment of record, dated January 19, 1928, of the oil and gas lease set out in each of the bills, each of which was executed on June 23, 1920. It is alleged that the defendants named in each of the bills claim to be the owners of an oil and gas lease on the same premises, executed after the execution and the recordation of the lease claimed by the plaintiff, but recorded before the date of the assignment to plaintiff of the lease claimed by it. The bill seeks to have this top lease in each case canceled, and plaintiff's lease adjudged valid and its title thereto quieted. A motion was made by the defendants in each case to dismiss the bill, substantially the same grounds being urged in support of the motion in each case. For this reason the cases were heard together on this motion, and will be disposed of in the same way.

Numerous grounds are urged in support of the motion to dismiss the bills, but, in view of the conclusions I have reached, it will be necessary to consider only two of these grounds, viz.: (1) That the bill in each case shows on its face that under the Act of March

8, 1920, plaintiff's lease, prior to the execution of the top lease complained of, had been forfeited for failure to pay the stipulated rentals on or before the date fixed in the lease contract; (2) that the bill in each case shows on its face that the plaintiff's lease had been abandoned prior to the execution of the top lease complained of.

The leases claimed by the plaintiff in these cases are identical in language, with the exception of the description, names of the parties, and the place stipulated for the payment of rentals, and they were each executed after the effective date of the Act of March 8, 1920, and, if they fall within the terms of that act, are, of course, controlled by it. Sections 1 and 2 of the act in question are now, respectively, section 3766b1c and section 3766b2c, Carroll's Kentucky Statutes, 1922 Edition, and read as follows:

"3766b1c. Whenever, in any lease of lands for oil and gas purposes, it is provided in substance that actual drilling or development may be postponed by the payment or tender of rentals on or before the date fixed in said lease for such payment or tender, if the lessee or assignee of said lessee shall fail to pay or tender said rents on or before the date stipulated in the lease, or contract to pay, then said lease or contract shall be void, unless the lessor thereafter, and before executing a new lease or contract, shall accept said rentals.

"3766b2c. That all valid existing or future contracts and leases for oil and gas rights upon and under the lands of this commonwealth, wherein by their terms a rental clause is provided in event of failure to drill for oil or gas within a given period, are hereby validated and declared to be, and shall be, construed by the courts of this commonwealth enforcible and binding contracts according to the terms thereof between the parties so long as the rentals therein provided shall be paid or tendered at and as provided by their terms during the period of said lease and contract."

[1] That the act of 1920, in so far as it applies to leases falling within its terms and executed after the effective date of that act, is valid, is no longer open to question. See Roberts v. Atlantic Oil Producing Co. (C. C. A. 6th Cir.) 295 F. 16.

[2] Counsel differ widely as to the character of the leases covered by sections 1 and 2 of this act, but it seems to me that this question presents no difficulty. Beginning with the case of Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602, 99 S. W. 668, in an unbroken line of cases, the Court of Appeals of Kentucky had laid down the rule that the primary purpose of oil and gas leases similar to the ones involved in these cases was to secure the development of the property and the payment of the royalty stipulated to be paid, and that the lessee could not, in opposition to the wishes of the lessor, postpone development of the property for an unreasonable length of time and extend the lease indefinitely by the payment of a mere nominal rental. In order that no injustice might be visited on either party to such leases, the court worked out the following formula for the adjustment of the rights of the lessor and lessee: If the lessor accepted the rentals stipulated in the contract for the rental period fixed in the lease, he could not, by demanding development during the period for which the rental had been paid, compel the lessee, on pain of forfeiture, to develop during that period. He could, however, for any rental period refuse to accept the nominal rental stipulated for that period and demand development, and, upon failure of the lessee within a reasonable time thereafter to develop, the lease would be forfeited.

The Court of Appeals, in applying this principle, made absolutely no distinction between the so-called "or" leases and the so-called "unless" leases. Typical cases of the application of this rule, involving both "or" and "unless" leases, are Monarch Oil & Gas Co. v. Richardson, supra; Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58; Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, 207 S. W. 698; McNutt v. Whitney, 192 Ky. 132, 232 S. W. 386; Hughes v. Parsons, 183 Ky. 584, 209 S. W. 853; Plumber v. Southern Oil Co., 185 Ky. 243, 214 S. W. 896; Ohio Valley Oil & Gas Co. v. Irvin Development Co., 184 Ky. 517, 212 S. W. 110; Bertram Developing Co. v. Tucker, 191 Ky. 9, 228 S. W. 1027; Maverick Oil & Gas Co. v. Howell, 193 Ky. 433, 237 S. W. 40; Bradshaw v. Hurt, 198 Ky. 38, 247 S. W. 1113; Lacer v. Sumpter, 198 Ky. 752, 249 S. W. 1026. This rule of construing contracts, disregarding, as it did, the general rule that parties sui juris should be allowed to make their own contracts and have them enforced as written, was justified by the court, in part at least, upon the ground of public policy.

Such was the settled law of Kentucky when the Legislature of 1920 met, and that Legislature must be presumed to have known of this rule for construing such contracts. Sections 1 and 2 of the act referred to, when read together, are the antithesis of the rule theretofore laid down and continuously followed by the Court of Appeals since the case of Monarch Oil, Gas & Coal Co. v. Richard-

son, supra. Section 1 of the act of 1920 applies to those leases which provide in substance "that actual drilling or development may be postponed by the payment or tender of rentals on or before the date fixed in said lease for such payment or tender."

Such a provision is typical of "or" leases. The agreement in such leases to pay a stipulated rental in lieu of development is not intended to be a consideration paid to keep the lease alive, in event of failure to develop. By its terms an "or" lease continues for the stipulated period, whether development is had or not, and the consideration to be paid in lieu of development is the price paid for the privilege of postponing development beyond the period fixed in the lease. This is exactly the kind of lease referred to in express terms by section 1 of the Act. The Court of Appeals had declared that, notwithstanding an "or" lease contract, by its express terms, gives to the lessee the right to hold his lease during the entire contract period, provided he either develops in accordance with the terms of the contract or pays the stipulated rental in lieu thereof, such contract would not be literally enforced, but the lessor could refuse to accept the nominal rentals tendered in lieu of development, and demand development, and upon failure of the lessee to comply within a reasonable time, the lease would be forfeited.

Section 1 of the act of 1920 declares that such contracts shall become void if the lessee fails to pay or tender the rents in accordance with the terms of the contract. This provision necessarily means that, if the rents are tendered in accordance with the terms of the contract, the contract is valid, and the lessor has no other choice than to accept the rents. Section 1 undoubtedly applies to "or" leases. Bearing in mind that the payment of rentals in an "unless" lease literally is not compensation for the privilege of postponing development, but is for the purpose of extending the life of the lease in default of development, it might be said that a literal construction of section 1 eliminates "unless" leases from its terms; but, reading sections 1 and 2 together, and having in mind the very evident intention of the Legislature to alter the rule laid down by the Court of Appeals, heretofore referred to, I think it very clear that each of these sections was intended to apply alike to "or" and "unless" leases.

Section 2 unmistakably discloses the intention of the Legislature to compel the courts to abandon the rule theretofore laid down by the Court of Appeals, in construing "unless" and "or" leases, and thenceforth to construe and enforce them as written, subject to the forfeiture provision of section 1. Undoubtedly, the Legislature intended the new rule to be as broad as the one it was superseding. As heretofore stated, the Court of Appeals had made no distinction between "or" and "unless" leases in applying the old rule. It will not be presumed that the Legislature intended the new rule to be any less comprehensive.

[3] It remains to be determined, therefore, if the leases involved in these cases come within the provisions of the act, and, if so, have they been forfeited under the provisions of section 1 of the act. Clearly, under section 1, before there can be a forfeiture, the lease must contain a provision for drilling within a specified time. It must also contain a provision for the payment of a stipulated rental on or before a stipulated date, in event of failure to drill. Granted these provisions in the lease, there must also appear a failure on the part of the lessee to pay or tender such stipulated rentals on or before the date fixed in the lease contract for their payment.

[4-6] The pertinent clause in the leases involved in these cases reads as follows, the italics being my own: "The party of the second part agrees to *commence* a well on said premises within one year from date hereof, or pay at the rate of 25 cents an acre for each additional 12 months *such completion* is delayed *from the time above mentioned* for the *completion* of such well until a well is completed; and it is agreed that the *completion of such well* shall be and operate as a full liquidation of all rents under this provision during the remainder of this lease."

If this clause is read literally, it binds the lessee to do nothing except to commence a well. The undertaking to pay rental is not conditioned on failure to commence a well, but upon failure to complete a well, the rental to be paid at the rate of 25 cents an acre for each additional 12 months *such completion* is delayed from the time above mentioned for the *completion of such well*. No one can read this clause without concluding that the parties had in their minds a definite time within which a well was to be completed. The phrase, "for each additional 12 months such completion is delayed," inevitably leads to the conclusion that the parties were contracting with reference to what their rights were, in event of failure to complete a well, and the phrase, "from the time above mentioned for the completion of such well," forces us to the conclusion that they had in their minds and were contracting with reference to a particu-

lar date on or before which a well should be completed.

The cardinal rule in the construction of contracts is to so construe them as to effectuate the intention of the parties, unless such construction does violence to the plain meaning of the contract as a whole, and in effectuating such intent a word may be disregarded or another substituted in its place, if it is clear from the whole context of the contract that such word was used inadvertently by the parties. Adopting this rule, I am persuaded, in view of the other language in the clause referred to, that the word "commence" was used inadvertently, and was intended to be "complete," and that the 12-months period following the date of the lease contract was intended by the parties to be the drilling period within which a well should be completed. Adopting this construction, the lessee was obligated to complete a well on the leased premises on or before the 23d day of June, 1921, or failing so to do, he was required to pay 25 cents an acre on or before the 23d day of June each year thereafter during the lease, so long as a well had not been drilled. See Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, 207 S. W. 698.

[7] Construing the bill in each of these cases most strongly against the pleader, it is readily apparent from its allegations that no well has ever been completed or even commenced on the premises covered by the respective leases, nor has any rental been paid, although, according to my interpretation of the contract, the time stipulated for the payment of several installments of such rentals had expired long before the execution of the top leases in these cases. Therefore, in my opinion, plaintiff's leases in these several cases fall under the condemnation of section 1 of the act of 1920, and must be declared void.

[8] If it be conceded, however, that the leases in question do not come within the provisions of section 1 of the act of 1920, I think it clear that the leases had been abandoned at the time of the execution of the top leases complained of. In reaching this conclusion, I am not unmindful of the rule contended for by the plaintiff—that abandonment is ordinarily a question of fact, to be determined by the circumstances and the intention of the party against whom the plea is asserted, but, where there is and can be no dispute about the facts, it then becomes a question of law.

In the case of Wilmore Coal Co. v. Brown (C. C.) 147 F. 931, in speaking of the plea of abandonment of oil and gas leases, the court said: "Ordinarily this is a question of fact, to be determined by the circumstances; the

intent being largely controlling. But under certain conditions it may become a question of law, to be declared by the court, particularly when the facts are undisputed."

In the case of Atchison v. McCulloch, 5 Watts (Pa.) 13, the court said: "Abandonment is not always a question of intention, exclusively for the jury, without a controlling instruction from the court. Under a certain uncontradicted state of facts, the law will pronounce the conduct of a party to be an abandonment, whatever may have been his intention." See, also, Paine v. Griffiths (C. C. A. 3d Cir.) 86 F. 452.

[9] Now, in these cases the admission to be drawn from the bills is that no well was ever completed, or even commenced, on the leased premises, nor were any rentals paid in lieu thereof, from the execution of the leases down to the date of the execution of the top leases —a period of approximately 7 years. Of course, there was no such physical possession of the oil and gas by the lessee as to repel the presumption of abandonment, nor is there any claim of any actual occupancy of the leased premises. Under these circumstances, appearing from the plaintiff's own pleadings, I think abandonment must be conclusively presumed.

[10] The plaintiff strenuously insists, however, that under the decisions of the Court of Appeals of Kentucky an oil and gas lease, such as those involved in these cases, conveys to the lessee title to the oil and gas in place, and that such a title, being a vested interest in fee in real property, cannot be abandoned by nonuser. It must be conceded that the Court of Appeals has declared that an ordinary oil and gas lease, such as the ones involved in these cases, conveys to the lessee title to the minerals in place. This, to me, seems an utterly untenable position, and was first announced in a case where that question was not involved and was not at all necessary to the decision. Wolfe County v. Beckett, 127 Ky. 252, 105 S. W. 447, 17 L. R. A. (N. S.) 688. Nor was the question involved or necessary to be decided in the case of Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19, where the principle was again laid down. The real question in each of those cases was whether oil and gas leases are property and subject to taxation under the Constitution and laws of Kentucky. The cases did not involve the question of what kind of property they are, nor did they involve the question of what interest, if any, in the minerals in place lessees take under such instruments.

Subsequent decisions, however, seem to

have committed the Court of Appeals of Kentucky, if not to the doctrine that an ordinary oil and gas lease conveys to the lessee title to the oil and gas in place, certainly to the doctrine that such leases convey an interest in land. Kash v. United Star Oil Co., 192 Ky. 422, 233 S. W. 898; Lowther v. Scheirich, 195 Ky. 177, 231 S. W. 834; Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323. See, also, Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084. This doctrine being a rule of property in Kentucky, is, of course, binding upon the federal courts as to leases on land in Kentucky.

[11] I do not understand, however, that the Court of Appeals of Kentucky has ever decided that such contracts convey to the lessee an absolute, unconditional fee. On the contrary, the whole trend of the opinions in Kentucky, construing such leases, is that whatever interest is conveyed is a conditional one, dependent upon the reasonably prompt development of the property, and the books are full of cases to the effect that such interest, as distinguished from an unconditional title in fee, may be abandoned. Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S. W. 438, 46 L. R. A. (N. S.) 672; United Mining Co. v. Morton, 174 Ky. 366, 192 S. W. 79; Monarch Oil & Gas Co. v. Hunt, 193 Ky. 315, 235 S. W. 772; Union Gas & Oil Co. v. Indian-Tex Petroleum Co., 203 Ky. 521, 263 S. W. 1; Wilmore Coal Co. v. Brown (C. C.) 147 F. 931, affirmed in Brown v. Wilmore Coal Co., 153 F. 143 (C. C. A. 3d Cir.); Paine v. Griffiths (C. C. A. 3d Cir.) 86 F. 452.

As heretofore indicated, in view of the conclusions herein announced, I do not deem it necessary to pass upon the other questions raised on the motions to dismiss. The motion to dismiss in each case will be sustained, with leave to the plaintiff, on or before July 15th, to amend, if it so desires.