### Sparks, et al. v. Albin, et al.

(Decided May 2, 1922.)

#### Appeal from Lawrence Circuit Court.

1.  Mines and Minerals—Lease—Rent—Forfeiture.—Where the lease contract between the landowner and an oil company provides that the rentals shall be paid within a given time to a certain person in one or more ways, and if not so paid the lease shall be void, the failure to comply with the terms of the lease by paying rentals or delay money in the way and manner provided forfeits the lease.

2. Deeds—Life Estate.—Where the father conveyed the land in fee to his son, making only the following reservation: "The parties of the first part reserve the control of said land during their natural life," the remainder in fee passed to the son, there being nothing greater than a life estate left in the father.

3. Mines and Minerals—Life Tenant.—A life tenant has no right to lease the premises for oil and gas, but the life tenant joining with the remainderman may execute a valid oil and gas lease.

4. Mines and Minerals—Life Tenant—Remainders.—An oil and gas lease executed by the life tenant and remainderman to an oil company by a contract provided that in case no well was commenced on the premises within twelve months from the date of the lease the lease shall be null and void unless the lessee shall thereby pay to a designated person ten cents per acre for each year drilling is delayed; the lease is void unless the lessee pays the rentals in the way and manner provided in the lease, and a payment of the rentals to the life tenant over the objection of the remainderman will not suffice to keep the lease in force.

5. Landlord and Tenant—Lease—Rent.—A provision of a lease that the rentals may be paid to first parties or deposited in a designated bank to their credit is not irreconcilable with a further provision written in the lease requiring all rental money to be paid to a certain one of four grantors, because a payment to that grantor so designated may be made directly to him or by depositing to his credit in the named bank.

O'REAR & FOWLER, S. S. WILLIS and JNO. W. WHEELER for appellants.

HOLT, DUNCAN & HOLT and A. O. CARTER for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

In 1909 R. M. Sparks and wife conveyed a farm on which they lived, containing about 100 acres, to their son, Parish Sparks, in consideration of $600.00 cash, making the following reservation: "The parties of the first part reserving the control of said land during their natural life." This deed was duly recorded in the proper office shortly after its execution. On February 10, 1916, Parish Sparks and wife, joining with them the life tenants, R. M. Sparks and wife, executed an oil and gas lease on the said lands to one A. C. Albin, the consideration being one dollar, and this was paid to R. M. Sparks, by the terms of which lease Albin was granted the right to go upon the lands mentioned and explore for oil and gas, drill wells, erect and maintain buildings and structures and to lay pipe lines. The landowners, it was provided, "shall have one-eighth part of all oil produced

from said premises to be delivered in pipe lines to which said second party may connect its wells." In case gas was found in paying quantities the grantors were to receive $100.00 per year for each well from which gas was marketed. Then follows a brief description of the lands and a statement of the source of title. The lease then provides: "To have and to hold the above premises as long as gas or oil is found in paying quantities on said premises on the following condition:

"In case no well is commenced within twelve months from this date, this grant shall be null and void, unless second party thereafter shall pay at the rate of ten cents per acre for each year drilling is delayed. A deposit to the credit of first party in any bank doing business in Blaine, Kentucky, will be good and sufficient payment for any money falling due on this grant. . . . In case no paying well is drilled on said premises within ten years from date this grant shall be null and void. . . . On payment of one dollar by second party and upon the abandonment of the premises by second party, or at the expiration of the rights and privileges granted, the failure to pay rentals by second party, then this lease shall be null and void and binding on neither party. All money due on this lease to be paid to Parish Sparks."

No well was commenced on the premises within twelve months from the date of the lease, nor was any rental paid until about the 5th of February, 1918, which was almost two years from the execution of the lease. This rental—ten dollars—was paid to R. M. Sparks, the life tenant, and he gave five dollars of it to his son, Parish Sparks, plaintiff herein. The next rental was paid to R. M. Sparks about February 1, 1919, and he tendered a part or all of this rental to Parish Sparks, but the latter declined to accept it and gave notice to the president of the Union Oil & Gas Company that he would consider the lease at an end unless the rentals were paid to him according to the terms of the lease contract; he also complained to the cashier of the bank at Blaine, Kentucky, where the deposits were being made to the credit of R. M. Sparks, that no rentals had been paid to appellant. The cashier of the bank took the matter up with the president of the oil company and told him that Parish Sparks had complained that no rentals had been paid him on the lease and that he was claiming the rentals according to the terms of the lease, but the president of the oil company instructed the cashier of the bank to

continue to pay rentals to R. M. Sparks, which was done for the years 1920 and 1921. In the meantime oil development was making progress in the immediate neighborhood of the lands in controversy. Conceiving that he had the legal right to a cancellation of the oil lease as a cloud upon his title, appellant Parish Sparks commenced this action in the Lawrence circuit court for a nullification of the lease upon two grounds: (1) The lease was void for want of mutuality; (2) it lapsed on failure of the lessee and his assignee to pay the rentals or delay money as provided in the contract. The case being prepared and properly submitted to the trial court, judgment was entered dismissing plaintiff's petition and adjudging him to pay the cost.

While it is earnestly and ably insisted with much show of reason that the lease contract under consideration is unilateral and therefore unenforceable, we think without so deciding this appeal can be disposed of on the ground also relied upon that the lease was to become and be null and void if a well was not commenced on the premises within twelve months from its date, unless the lessee should thereafter pay at the rate of ten cents per acre for each year drilling was delayed. Giving this condition of the contract its most liberal and favorable construction to appellee company, we must hold that it was the duty of the lessee to commence a well on the premises within twelve months from the date of the lease, and failing in this the lease was to become null and void unless the lessee should obtain further time by thereafter paying to the lessor ten cents per acre. If it be conceded that the payment of ten cents per acre was not required to be made in advance of the end of the twelve months' drilling period, nor immediately upon the termination of the twelve months granted by the lease in which to commence a well, but any time within the following year, then it was necesary to make said payment some time between the 10th of February, 1917, which was one year from the date of the lease, and the 10th day of February, 1918. As this payment was made about the 5th of February, 1918, it was in time if it had been to the right party, Parish Sparks, as provided by the lease, but it was paid to R. M. Sparks, the life tenant. This, however, is not a serious matter under the facts in this case, for R. M. Sparks immediately gave to his son, Parish Sparks, one-half of the rental, which Parish Sparks accepted. He says he did not receive it on the rentals but on an obligation

which his father otherwise owed him; but, granting that he did accept it upon the rentals, he was as conclusively bound by the payment of the $5.00 as if he had received the whole rental debt from the company for that year, and he was not therefore entitled to a cancellation of the lease contract during the balance of that year, but another year began on February 10, 1918. Although he protested both to the president of the oil company and to the cashier of the bank at Blaine, in which bank it was provided by the contract deposits should be made in payment of the rentals, that the rentals had not been paid to him and demanded of such persons that the rentals be paid direct to him, and this fact was further called to the attention of the president of the company by the cashier of the bank, no rentals were in fact paid to appellant Parish Sparks either in February, 1919, or 1920, but were paid to R. M. Sparks, the life tenant, who, under the lease, had no right to receive or retain them. Appellant Parish Sparks refused to accept rentals during this time from R. M. Sparks, although they were tendered to him. Clearly, the payment of rentals by the oil company to R. M. Sparks, the life tenant, in disregard of the written provision of the lease contract saying, "all money due on this lease to be paid to Parish Sparks," was no payment of rentals at all within the meaning of the lease contract and did not have the force or effect of continuing the lease in force contrary to its terms. Specifically it provided that in case no well was commenced within twelve months from date of the contract then the lease was to become and be null and void, and the only way it could be continued in force for another period of twelve months was by payment to Parish Sparks of rentals at the rate of ten cents per acre for each year drilling was delayed. The failure to pay the rentals when due under the terms of this lease rendered it null and void. It could only be kept alive by the payments, and a payment to a third person or to a person other than that specified in the contract, especially over the protest of the lessor and owner of the land to whom it was specifically provided the lease money should be paid, was in legal contemplation a failure to make payment, and the lease was in effect and in fact null and void by its terms at the time of the commencement of the action from which this appeal resulted.

It is contended, however, in brief of counsel for appellee that the written provision in the printed form, requir-

ing all money due on this lease to be paid to Parish Sparks, contradicts and is irreconcilable with the preceding provision contained in the contract to the effect that "a deposit to the credit of first party in any bank doing business in Blaine, Kentucky, will be good and sufficient payment for any money falling due on this grant," but we do not so consider it. If, however, the two provisions were repugnant the script provision would, under a well-recognized rule, prevail over the printed form. Aside from this, the whole contract must be read and considered together and harmonized. So, reading these terms of the contract, it is plain that the lease or delay money was to be paid in all events to Parish Sparks and to no one else, but this payment could be made to him in person or by deposit to his credit in the bank of Blaine. If the money had been deposited to the credit of Parish Sparks in the bank of Blaine, as provided by the terms in the contract, this lease would not have lapsed for want of payment of the rentals even if he had refused to accept them or to draw them from the bank.

R. M. Sparks at the time of the commencement of this action had no interest whatever in the mineral in and under the land which he conveyed by deed of general warranty to his son, Parish Sparks, in 1909, reserving only a life estate or right to use and control the surface of the lands. While he could have objected to the lessee of Parish Sparks entering upon the estate during his lifetime he had no interest in nor right to maintain an action against the lessee for a cancellation of the oil lease unless and until that tenant undertook to enter upon the premises and to interfere with his life estate. Having no interest in the mineral under the lands R. M. Sparks was not a necessary party to an action to quiet title brought by the owner in remainder. Although a life tenant may prevent the lessee of the remainderman with whom he did not join entering upon the premises during the continuance of his estate, he is not a necessary party to an action by the owner of the estate in remainder to have a cancellation of an oil lease as a cloud on his title. Meredith v. Meredith, 193 Ky. 192; Shutt v. Shutt, 192 Ky. 48.

Reference is frequently made in the record to a compromise which it is alleged was made between R. M. Sparks and appellant Parish Sparks of a suit brought by the former against the latter for a cancellation of the deed made between them in 1909, but we are unable to see the relevancy of this evidence and argument to the issues

involved on this appeal. If the lease contract at the time of its execution was unilateral, or if after its execution the lessee and his assigns failed to pay the delay money stipulated in the contract in the way and manner and time therein provided, the lease by the force of its own terms became inoperative. That there was a compromise agreement between the life tenant and the remainderman during the litigation cannot operate to the advantage or disadvantage of either of the parties to this litigation.

For the reasons indicated the judgment is reversed for proceedings consistent with this opinion.