## Hester, et al. v. O'Rear.

(Decided February 19, 1924.)

## Appeal from Warren Circuit Court.

1. Mines and Minerals—Evidence Held to Prove Prima Facie Genuineness of Paper Certifying Rent Paid and Lease in Full Force.—Evidence held to prove prima facie the genuineness of a paper certifying to the payment of rent under an oil lease described therein, and that the lease was in full force and effect.

2. Estoppel—A Paper Signed by Owners of Land Held a Good Basis of Estoppel in Favor of Assignee of Oil Leases.—A paper signed by owners of land August 24, certifying to payment of rents under a recorded oil lease purporting to be signed by them, and that it was in full force and effect, held a good basis of estoppel against them in favor of the assignee in an assignment of the lease dated August 23, where evidence showed the assignee declined to accept the assignment until he was assured rentals were paid, and it was held up until after such paper was delivered to him, whereupon he accepted the assignment and paid the consideration.

3. Mines and Minerals—Lease Not Void by Reason of Improper Initial of Grantor.—An oil lease was not void because the grantor was written "W. A. H." instead of "V. A. H." and the signature in the same way; it appearing that the grantor made a "V" in a way that more nearly resembled the letter "W" than it did the letter "V," and in this way the draftsman was confused, there being no doubt as to who made the conveyance.

4. Mines and Minerals—Land Held Sufficiently Described in Lease.—An oil lease describing the lands as "bounded on the north by the lands of Russellville pike; on the east by the lands of Grubbs; south by the lands of Connelly; west by the lands of Cherry, containing 37½ acres, more or less," was sufficient description, though the lands are located on the opposite side of Russellville road from that set out, and some of the farms also lie in a different direction from that set out, but lie on such road and join the lands described in the lease.

5. Husband and Wife—Where Wife Signed Husband's Name to Lease at His Request, Lease Held Not Void on Ground that he did Not Join.—Where a wife signed her husband's name to an oil lease at his request, and he acknowledged it, it is not void under Ky. Stats., section 2128, on the ground that he did not join in the conveyance.

6. Mines and Minerals—Lease Held Valid as Against Contention that it was Unilateral and Unenforceable.—An oil lease, reciting a cash consideration of $1, and containing an agreement to begin drilling within 12 months or to pay a stipulated rental in advance each

year thereafter until drilling is begun, is valid as against the con-
tention that it is unilateral and unenforceable.

JOHN L. STOUT for appellants.

RODES & HARLIN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Mrs. Virginia A. Hester and her husband, L. S.
Hester, instituted this equitable action in the Warren
circuit court alleging her ownership of two small tracts
of land containing an aggregate of 37½ acres, and seeking to cancel an oil lease held thereon by J. H. O'Rear
and to quiet the title thereto. The names of the parties
grantor appearing in that instrument are L. S. and W.
A. Hester and it purports to have been executed and
acknowledged by them before Charles E. Locke, notary
public, July 1, 1919, the grantee being Joe Hieatt.

This lease was recorded on the 13th day of September, 1919. In June, 1920, Hieatt executed and acknowledged an assignment of a one-third interest each to C. E.
Locke and S. J. Tichenor. On August 23, 1920, Hieatt,
Tichenor and Locke assigned the lease to J. H. O'Rear,
this being duly acknowledged and recorded.

Plaintiffs claim that on the 29th day of May, 1919,
Hieatt and Locke visited their residence and stated to
them that they were representatives of the Standard Oil
Company, and if they could get as much as 1,500 or 2,000
acres, they would take leases and begin drilling shortly;
they were not taking leases at that time but wanted a
written agreement from plaintiff that she was willing to
lease. Mrs. Hester did not want to sign this agreement,
but after much persuasion she was induced to and did
do so, but that Mr. Hester was at the house only a few
minutes and left for his work without signing it or authorizing his wife to do so; that neither of them acknowledged any paper; that some time in July Locke and
Hieatt returned and Locke came to the house and threw
a dollar on the table, telling Mrs. Hester that was for
her lease, and over her protest left it; that she learned
later that the lease had been recorded and the following
spring the lessees on two diffrent occasions sent to her
a check for $9.25 as quarterly payments of the rental. This
was brought to her by neighbors; she did not want to
accept these payments but after much persuasion did so;

that in August Mr. A. S. Walker of Bowling Green and some other gentlemen visited the plaintiff and induced her to accept $500.00 as the consideration for a new ninety-day lease and to accept $18.00 then due as rental on the former lease, this under an agreement that the drilling should begin within ninety days. Such is the testimony of Mrs. Hester and she is corroborated as to the first conversation by her niece, who states that she was present, and indirectly by others in the neighborhood as to conversations with Locke and Hieatt. An objection was sustained to the competency of L. S. Hester as a witness.

On the other hand it is stated by Locke and Hieatt that at the time that neighborhood was "wild cat" territory. Hieatt wanted some leases if he could get as much as 1,500 or 2,000 acres, and went through to ascertain if this could be secured. Mrs. Hester was agreeable, but no paper was signed at that time; that they went back on the first of July. In the meantime Hieatt had filled a blank lease which Locke carried to the house, Hieatt remaining in the machine about forty or fifty feet distant. The lease was fully read by the parties and signed and acknowledged by Mrs. Hester. Mr. Hester requested her to sign his name which she did, and he also acknowledged it, and that no other paper was there signed, a consideration of $1.00 being paid at this time. Locke testified fully to these facts. Hieatt could not hear the conversation but says that he could see all that was going on, and is positive in his declaration that the instrument was signed and acknowledged at the time by both parties. It is further shown that Hieatt sent quarterly checks for the rental in the spring and summer of 1920 to Mrs. Hester by her neighbors, and two of these have testified. They appear to be gentlemen of character and standing and both of them state that while Mrs. Hester grumbled about the amount she was receiving she did not claim any invalidity in the lease and accepted the checks in payment of the rental without any insistence on their part.

It is further shown that the parties negotiated the lease to the defendant O'Rear for the sum of $5,500.00. He had A. S. Walker, a gentlemen of the highest standing, to pass upon the abstract of title. Walker reported that all of the rent had not been paid and O'Rear was unwilling to accept the lease until this had been arranged with Mrs. Hester. Walker is dead, but there is evidence

conducing to show that he, together with some agents who negotiated the assignment of the lease, visited Mrs. Hester and that she was paid the sum of $518.00; that Walker gave to O'Rear a paper purporting to be signed by Mrs. Hester and witnessed by him, reading as follows:

"We, L. S. Hester and V. A. Hester, certify that the rental due July 1, 1920, on lease executed by us to Joe Hieatt dated July 1, 1919, has been paid in full and that the said lease is now in full force and effect, said lease being of record in deed book 130, page 114, in the office of the clerk of the Warren county court.

"Witness our hands this 24th day of August, 1920.

"Signed V. A. Hester,
                 L. S. Hester.

"Witness.
Signed. S. A. Walker."

That thereupon O'Rear without any notice of infirmity purchased the lease and took the assignment.

Mrs. Hester was examined at great length as to those two papers. She claims that they are not the papers that she signed, but does not deny her signature to them, and without extended argument we are satisfied that they are the original papers which she signed. It is urged that the signature of Walker was not proven. While this should have been done it was proven without objection that Walker delivered this paper, bearing his signature as a witness thereto, to O'Rear as evidence that the title to the lease was clear, and this, together with the uncertain and evasive evidence of Mrs. Hester, would constitute *prima facie* evidence of its genuineness, especially in view of the fact that Mrs. Hester received the rentals on the lease and $500.00 additional at the time of the Walker transaction, which it is shown that he deposited to her credit at bank, and which she admits she gave him for that purpose.

In this view of the case it is unnecessary to determine the effect that the execution of a new ninety-day lease would have had upon the old one, as we are convinced that Mrs. Hester's statement in reference thereto is erroneous and that such lease was not executed. It is pointed out that the assignment from Hieatt, &c., to O'Rear was dated August 23, and the paper witnessed by Walker, *supra,* is dated the 24th. From this fact it is

urged that the Walker paper could not be the basis of an estoppel as the trade was consummated before it was executed. This, however, is explained by the evidence.

While the assignment in the lease had been made, O'Rear declined to accept it until he was assured that the rentals had been paid, and it was held up until after the Walker paper was delivered to him, and being thus assured, he accepted the assignment and paid the consideration. We think this sufficient to constitute him an innocent purchaser and as an estoppel was properly pleaded it constitutes sufficient evidence to support it.

But it is said that the name of the grantor in the lease is written W. A. Hester instead of V. A. Hester and the signature in the same way; that the deed is therefore void and that a valid deed cannot be created by estoppel. A number of decisions are cited to the effect that if the grantor's name does not appear in the body of the deed the signature and acknowledgment carry no weight. Such is the law, but it is shown that in the signature of Mrs. Hester she made a ''V'' in a way that more nearly resembled the letter ''W'' than it did the letter ''V'' and that in this way the draftsman was confused and used the wrong initial, but it is clear that she is the one referred to as making the conveyance and the one executing it, hence she cannot rely on the principle alluded to.

It is further claimed that the plaintiff's lands were not described in the lease and cannot be identified by the description, which reads as follows:

''Bounded on the north by the lands of Russellville pike; on the east by the lands of Grubbs; south by the lands of Connelly; west by the lands of Cherry, containing 37½ acres, more or less.''

It is shown that the lands are located on the opposite side of the Russellville road from that set out in the writing and that some of the farms mentioned lie in a different direction from that set out therein. However, the lands lie on the Russellville road and join the lands described in the lease and in this way are easily identified.

It is also claimed that L. S. Hester did not join in the conveyance, and that under the provisions of section 2138 of the statute the lease is void. It is unnecessary to consider the legal proposition, as we are satisfied from the evidence that L. S. Hester authorized his wife to sign his name to it and that she did so and that he ac-

knowledged it. It is also urged that the lease is unilateral and therefore unenforceable. It recites a cash consideration of $1.00 and contains an agreement to begin drilling within twelve months or to pay a stipulated rental in advance each year thereafter until drilling is begun. The validity of this character of lease has at all times been upheld.

The chancellor was of the opinion that the plaintiff had not manifestd a right to the relief sought and dismissed the petition. As the questions to be determined were issues of fact and the evidence conflicting his opinion is entitled to some weight, and besides it is supported by the preponderance of the evidence.

Wherefore the judgment is affirmed.