# Union Gas and Oil Company v. The Wiedeman Oil Company, et al.

(Decided March 25, 1924. Rehearing Denied, with Modification, November 20, 1925.)

## Appeal from Johnson Circuit Court.

1. Deeds—Conveyance of Grantor's Undivided One-Half Interest in Land Created a Life Estate in the Wife, with Remainder to Their Children.—Where grantor and his wife were joint owners of a tract of land, conveyance by him of an undivided one-half interest therein to his wife and their infant children created in her a life estate, with remainder to the children in such undivided one-half; and other undivided one-half being still owned by the wife in her own name.

2. Tenancy in Common—Grantor and Wife could Jointly Make a Valid Oil and Gas Lease to Her Undivided One-half Interest in Land.—Where grantor and wife were joint owners of a tract of land, and he conveyed his undivided one-half interest therein to her and their children, grantor and wife jointly could made a valid oil and gas lease to her undivided one-half interest in land.

3. Life Estates—Life Tenant and Remaindermen could Jointly Make Valid Oil Lease.—Where grantor and wife were joint owners of tract of land, and he conveyed his undivided one-half interest therein to her and their children, while neither life tenant nor remaindermen could singly make a valid oil and gas lease under such conveyance, they could jointly do so.

4. Mines and Minerals—Lease Conveyed Interests of Lessors in Land.—Where grantor and wife were joint owners of tract of land, and he conveyed his undivided one-half interest therein to his wife and their children, lease by grantor and wife, if otherwise valid, of her undivided one-half interest therein for oil and gas purposes conveyed same, and lease by wife and children of other undivided one-half conveyed their interest therein.

5. Mines and Minerals—Consideration of $1.00 Held Sufficient to Support Lease—"Consideration."—A consideration of $1.00 held sufficient to support an oil and gas lease by terms of which lessee's interest was subject to defeasance for failure to drill wells, though lessee might surrender lease to lessors upon payment of the $1.00; "consideration" being defined as consisting of anything of any value.

6. Mines and Minerals—"Unless Lease" and "or Lease" Distinguished.—An "unless lease" and an "or lease" convey the same privileges to the lessee, except that in the former lessee forfeits the lease ipso facto by not paying the stipulated rental at expiration of contractual period within which he agrees to develop or at expiration of a reasonable time in which he is compelled to develop.

7. Mines and .Minerals—Consideration Sufficient to Support Lease Supports all its Stipulations, Whether They be Optional on Part of Lessee.—Where there is sufficient consideration in a lease, it is sufficient to support all its stipulations whether they be optional on part of lessee, and, when latter in such a lease obtains the right at his option to extend time for development under the "unless" clause, he may do so by paying the stipulated rental on or before the time it is due, and thereby extend his right to explore for period covered by paid rentals.

8. Estoppel—Plaintiffs Held Estopped to Contend by Amendment Immediately Before Trial that Defendant Acquired Nothing Under its Lease.—In suit by owners of oil and gas lease to cancel another lease on same property, plaintiffs, by acknowledging validity of defendant's lease, and that it was owner of at least one-half of products under the land covered by the lease, and that plaintiffs were owners of the other one-half, was estopped to contend by an amendment filed immediately before trial that defendant acquired nothing under its lease.

9. Mines and Minerals—Oil and Gas Leases are "Interests in Real Estate."—Oil and gas leases are "interests in real estate," and assignments of such are controlled by law regulating sale of real estate.

10. Tenancy in Common—Compulsory Partition Not had Between Cotenants Holding Valid Oil and Gas Leases.—Where each of cotenants had a valid oil and gas lease to an undivided one-half interest of the whole tract in dispute, and oil might underlie all or any part or none of it, property was indivisible, and compulsory partition of mineral rights will not be had, but property will be sold and proceeds divided.

HOLT, DUNCAN & HOLT and OTTO C. GARTIN for appellant.

WHEELER & WHEELER, ROBT. H. WINN and S. S. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming the judgment both on the original and cross appeals.

Nelson Collier and his wife, Sarah, were the joint owners of 50 acres of land in Johnson county. On March 15, 1893, the husband, in consideration of love and affection, conveyed his undivided one-half interest in the land to the wife and their infant children, James, Mary and Laura Collier. By this deed the wife took a life estate with remainder to the three children in that undivided one-half. Davis v. Hardin, &c., 80 Ky. 672; Virginia Iron, Coal and Coke Co. v. Dye, 146 Ky. 519; Smith v. Upton, 12 K. L. Rep. 27; McFarland v. Hatchet, 118 Ky. 423;

Salyer v. Johnson, 32 K. L. Rep. 709; Brown v. Richmond, 33 K. L. Rep. 173. The other undivided one-half interest was still owned by Sarah Collier in her own name.

On May 3, 1916, Nelson and Sarah Collier executed an oil and gas lease upon the entire tract of land to A. C. Albin and by different assignments it has been transferred to and is now owned by the Union Oil and Gas Company.

On the 14th day of December, 1917, Nelson and Sarah Collier, their three children, then adults, and the spouses of such as were married, executed another lease upon the same property to the Southwest Petroleum Company, and by various assignments this lease has reached and is now owned and held by the Wiedeman Oil Company, royalty interests therein being held by R. A. Childs, W. B. Lindsey and George McNabb.

The last named four parties, together with all of the above named lessors, filed suit in the Johnson circuit court against the Union Oil & Gas Company on the 31st of May, 1921. Several amendments were afterwards filed, the final relief sought being, (1) to have the Albin lease cancelled, and to have the title in the top lease quieted, or in the alternative, (2) for a partition by a division in specie, but if indivisible, then, (3) for a sale and division of the proceeds, and (4) for the appointment of a receiver to take charge of the property and develop it.

The circuit court adjudged each of the leases valid to the extent of an undivided one-half interest and decreed a sale of the leasehold interests and division of the proceeds, and also adjudged the proportion in which the future royalties shall be divided by the purchasers.

The Union Oil & Gas Company has appealed on the theory that the court should have denied division and by its judgment permitted either or both lessors to proceed with development on equitable principles. On the cross-appeal of appellees they insist that the judgment is erroneous because, (a) the Albin lease, which appellant now owns, was ineffectual for any purpose for the reason that the remaindermen did not join in it; and because, (b) it failed to adjudge that lease void *ab initio* upon the grounds as alleged in their belated amended petition that, "The right purported to be granted therein was incapable of exercise and was wholly nugatory. The said lease further, was void and of no effect, because it was exe-

cuted without consideration or covenants and did not
obligate the said A. C. Albin or his assigns to develop
said property or pay rentals or otherwise.'' They do
not seem to object to the judgment ordering the leasehold
interests sold for the purposes of division. We will first
determine those two contentions.

Disposing of contention (a), it properly may be said
that there is no reason why Sarah Collier and her hus-
band jointly could not make a valid oil and gas lease to
her undivided one-half interest in the land. Ball v.
Clark, &c., 150 Ky. 38. As to the other half interest,
while neither the life tenant nor the remainderman could
singly make a valid lease, they could jointly make such
lease. Meredith v. Meredith, 193 Ky. 192; Sparks v.
Albin, 195 Ky. 52; Gerkins v. Ky. Salt Co., 100 Ky. 734.
It follows that if the Albin lease was otherwise valid, it
conveyed the one-half undivided interest belonging to
Sarah Collier, and that the top lease conveyed the other
one-half undivided interest owned by her and her chil-
dren, all of which is upon the theory that the Albin lease
for whatever interests it had the effect to convey was
valid in its inception. Whether or not that was true will
now be taken up by us for determination, and which ques-
tion is the one raised by contention (b) above.

That lease was executed by N. A. Collier and wife,
Sarah Collier, to A. C. Albin for an express consideration
of $1.00, ''receipt of which is hereby acknowledged,'' and
it expressly granted and leased to him all the oil in and
under the tract of land, with the right to enter thereon
at all times for the purposes of drilling or operating for
oil or gas and to do other named things ''necessary for
production and transportation of oil or gas.'' It pro-
vided for a royalty of one-eighth of all the oil produced
under the privileges therein granted to the lessors and
the payments to them of one hundred dollars annually
for every gas well from which gas was produced in suf-
ficient marketable quantities to be transported. It was
for a period of ten years ''or as long as gas or oil is found
in paying quantities,'' but all ''on the following condi-
tions: in case no well is commenced within twelve months
from this date then this grant shall be null and void un-
less second party shall thereafter pay at the rate of .10
cents per acre for each year drilling is delayed.'' Then
follows other conditions immaterial to the issues here,
among which was a designated bank in which rental pay-

ments might be made, "for any money falling due under this grant." Then follows a surrender clause wherein it is provided that the lessee upon the payment of $1.00 to the lessors might surrender the lease and if done it would "be null and void and binding on neither party." It was and is the contention of plaintiffs that the lease as so phrased was without consideration and was, therefore, unilateral and void, and they rely principally upon the cases from this court of Berry v. Frisbie, 120 Ky. 337; Young v. McIllhemey, 116 S. W. 728; Killebrew v. Murray, 151 Ky. 345, and Soaper v. King, 167 Ky. 121.

In some of them at least there are expressions which would seem to be broad enough to sustain the contention, but a critical analysis of them will reveal that the cases cited therein for the position do not sustain it because inapplicable to the particular facts in those four cases. Others of them involved the remedy of *specific performance* wherein the inadequacy of the monetary consideration ($1.00) is an essential element in determining whether or not courts will enforce that remedy; while others of those cases are based upon one or more of the preceding ones and which prior ones contain the vice to which we have referred. It might also be said in this connection that the four cases referred to from this court and relied on by appellees appear to be almost if not entirely without company, since practically the courts of all the states in the union, the federal courts and this court, both since and before the rendition of those opinions, hold that in leases of this character, to say nothing about the multiplicity of contracts in commercial transactions, a consideration of $1.00, *if it was the only one,* is not only a valuable consideration coming from the lessee, but is sufficient to support the lease and all of the optional conditions and privileges which it contains. Judge Cochran, the learned United States district judge for the Eastern Federal District of Kentucky, in the case of Lindsey v. Raydure, 239 Federal Reporter 928, beginning on page 965, made a most exhaustive analysis of the four cases referred to, and in which he clearly pointed out the discords in them and wherein the facts under consideration in each of them were not parallel with those in that case, which were the same as we have here, with the single exception that the lease therein involved was what is known as an "or" lease, whereas the one we have now

is what is known and referred to as an "unless" lease, and which difference we will subsequently discuss.

Since the question is a most important one in this state, and since we know that we can not improve on Judge Cochran's analysis of those opinions, we have concluded at the expense of some space to insert his analysis as part of this opinion, and it is:

"Coming, then, to the Kentucky cases involving oil and gas leases relied on to support defendant's contention, the first to be considered is the Frisbie case, decided in 1905. The instrument involved in that case, considered by itself, was a mere option. (No present grant) By it the landowner *offered* to grant the oil prospectors the right to produce and make their own the oil and gas so found, paying him certain royalties, and, in consideration of $1.00 paid, the receipt of which was acknowledged, agreed to keep this offer open for acceptance for four months thereafter. Assuming the $1.00 to be a sufficient consideration to make such agreement binding upon the landowner, the prospectors had the option for four months in which to accept the offer, and during that time the landowner had no right to withdraw it. By an acceptance thereof within the four months, without more, the prospectors would have the right for two years to explore for oil and gas, and, if found, to such a deed, and the prospectors would come under an obligation to explore and to produce. And even though the $1.00 was not sufficient consideration to make such agreement binding, if in fact the offer was accepted within the four months before it was withdrawn the same result would follow as held in the Murphy-Thompson Co. case. In either contingency, by the acceptance of the *offer* within the required time, the parties would come into a binding contract relation between themselves. So far as the right to explore was concerned, the contract would be executed. Thereupon the prospectors would become vested with the right to explore for two years. So far as the right to produce and make their own oil and gas which should be found, it was purely executory. The instrument contemplated and provided that another instrument, to-wit, a deed, should be executed conveying such right. The offer was accepted in the four months and the result stated followed. Before the expiration of two years thereafter the prospectors demanded the deed called for by the contract, and the landowner refusing to

execute it, they brought suit to compel him to do so. The suit, therefore, was a suit for specific performance of this contract so entered into. By the terms of that contract the prospectors were not entitled to the deed unless they had explored the land and found oil or gas in paying quantities. As a matter of fact they had done no exploration on the land covered by the contract whatever. They had sunk five wells on an adjoining tract of land, and claimed to have found there oil and gas in paying quantities, and one of them claimed further to have satisfied himself that there was oil in the land by the use of a forked hazel switch, called a 'water witch,' through the means of which he could unerringly determine the presence of oil in the land. But this did not meet the condition precedent, whose happening was essential to entitle the prospectors to a deed under the contract. That was that oil or gas should be found in the land by exploring it, and that had not been done. Besides, the deed itself, if given, could do no more than convey a right to explore which the prospectors already had. There could be no vested right to produce and make their own until those substances, or either of them, were found by exploration to be there. The court held, and that properly so, that the plaintiffs were not entitled to the relief sought, and this on the ground that the condition precedent, on the happening of which they were to be entitled to the deed, had not happened.

"All the case stands for, therefore, all that it is possible for it to stand for, is that, if a landowner binds himself by an executory contract to make a deed to another for the right to produce and make his own oil and gas, which he may by exploration find therein, such other person will not be entitled to such deed until he has in this way found such to be the case. The court, however, did not confine itself to this, the only question really in the case, but considered another one. It was whether, if by the acceptance of the offer the prospectors did not come under an obligation to explore and produce, what would be their rights in that contingency? This question was outside of the case, for the court held that they did come under such obligation. Seemingly it was held that they would have none. And it would seem that the question was really, if not actually, so treated, the same as if it had been whether a lessee in an oil and gas lease has any enforceable rights under a lease, the sole consideration

for which is $1.00 in cash paid, granting him the right to explore and to produce and make his own, where there is no agreement on his part to explore and produce, but which benefits it would have to be held were secured to him by a condition subsequent, and that effectively. Two reasons were given by the court, through O'Rear, J., for this negative answer, one in these words: 'Such contracts lack the mutuality essential to their validity. A unilateral executory contract is in law a *nudum pactum,* and is unenforceable. Where it is left to one of the parties to an agreement to choose whether he will proceed or abandon it, neither can specifically enforce its execution in equity.'

"This quotation consists of three sentences. Take the first one: What mutuality is essential to the validity of contracts? This question is answered by Judge O'Rear in the Murphy-Thompson Company case, where the court, through him, said: 'It is generally said that one essential of every executory contract is mutuality of obligation and remedy. That there must be mutuality of obligation, by which is meant an undertaking on one side and a consideration upon the other, is true always.' In other words, wherever there is an undertaking on one side and a consideration for it on the other, there is mutuality. If so, where there is no undertaking on either side, and the contract is executed on both sides, there must be mutuality, if not mutuality of obligation. In such a case there is no mutuality of obligation, because there is no obligation on either side. Such is the case as to a lease of the kind supposed. The lessor on his side grants the lessee the right to explore and produce, and the lessee on the other pays him $1.00 therefor. It is not true that in such a case the mutuality essential to the validity of the lease is lacking.

"Take the next sentence. It is not true that every unilaterial executory contract is in law a *nudum pactum* and is unenforceable. Binding executory contracts are divided into two classes, bilateral and unilateral. And a unilateral contract may be as binding as a bilateral one; *i. e.,* if it has a consideration to support it. That is recognized in the quotation made from the opinion in the Murphy-Thompson Co. case and in this additional quotation therefrom: 'An option to sell is a standing offer to sell to the person and upon the terms named in the option, and an agreement to keep the proposition open for ac-

ceptance for the time stated. If its terms are fair, and have been understandingly entered into (it may be added if a valuable consideration is given therefor), there appears no reason why it should not be enforced, if accepted and offered to be complied with by the payment of the consideration within the time stipulated.'

"And such an option is an instance negativing also the correctness of the third sentence. The case of Bacon v. Kentucky Central Ry. Co., 95 Ky. 373, 25 S. W. 747, is a case where an agreement coming within the terms of that sentence was specifically enforced. In support of this statement there was cited the Litz and Federal Oil Company cases, both of which have already been considered and their value determined, concerning which, therefore, no more need be said here, and the case of Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955, a case which figures a great deal in cases elsewhere and in Kentucky relied on by the defendant. That was the case of a bilateral contract, and doctrines applicable to the enforcement of a bilateral contract have no place whatever in determining the rights of a lessee under such a lease.

"The other reason referred to is put in these words: 'Nor is the recited consideration of $1.00 sufficient to uphold an action for the specific enforcement of a contract otherwise unsupported by consideration.'

"In support of this the Federal Oil Company case is cited. As in the case supposed a suit to protect the lessee's rights is not a suit for the specific enforcement of a contract, but a suit to prevent waste, this statement has no relation to such a suit, even if it be true, which it seems to imply, that in no case will a contract be specifically enforced where $1.00 is the only consideration therefor.

"I have given so much space to this case because it is the principal one of the cases relied on by defendant, and in so far as the other three tend to support his contention it is largely due to this case. We have found that, in so far as the discussion in the opinion has bearing on the question involved here, it had nothing to do with any question involved in the case, is inaccurate in its statements, as appears from a close consideration of them, and as shown by the later case of Murphy-Thompson Co., and is based upon decisions that either have no relation to the question discussed or have been discredited in the jurisdiction where rendered.

"The next case for consideration is the Young case. The leases there involved contained surrender clauses. They were made in consideration of $1.00 and the covenants and agreements therein contained. There was no provision prescribing how long the rights granted were to last. The only express agreements on the part of the lessee which they contained was as to the payment of royalties. There was no such agreement to explore. The sole provision as to exploration was that, if no well was commenced in one year, the grant should become null and void unless the lessee should pay an annual rental for each year thereafter commencement thereof should be delayed. The lessee did nothing under the leases, and the lessor sued him for 2 years' rent. It was held that he was not entitled to recover. The ground of the decision was that the lessee had not agreed to pay the rental. The court, through Judge Lassing, said: 'But the plain language of the leases shows that, if no well is commenced within one year, the leases become null and void. Thus the failure of the lessee to commence operations within a year cancels the leases, and the only way their cancellation can be avoided is by the lessee paying $125.00 to continue them in force for another year; or, expressing it in another way, these leases are simply options given by the lessor to the lessee for one year, with the right to renew the options at the end of the year upon the payment of $125.00, if the lessee has not commenced operation thereunder within the twelve months. There is nothing in either the leases or the contract binding the lessee to do anything. He has the exclusive right to bore for oil or gas upon the premises described in the leases for twelve months, and if he fails to exercise this right, such failure, of itself, operates to cancel the lease. The right to bore for either oil or gas is purely optional with the lessee; the lessor is bound, but the lessee is not. There is nothing in the leases or the contract upon which the lessor could base an action for specific performance; under neither the leases nor the contract could he compel the lessee to commence operations, or to continue them after he had commenced.'

"The case, therefore, did not involve the question whether the lessee had the right to drill a well during the year, or thereafter, if he paid or tendered the annual rental, or anything as to the validity of the leases. No such question was in the case. Notwithstanding this, it

was held that the leases were void for want of mutuality, and the Litz, Steinwender, Lowe, and Erisbie cases were cited in support of this position, which decisions, as has been shown, have no bearing whatever on the validity of the leases.

"Then comes the Murray case. The instrument involved there was a phosphate lease. It was made in September, 1908. The grant was for the term of 10 years and so long as phosphate or phosphate rock should be found in paying quantities. The consideration therefor was $1.00 and covenants therein contained. It contained no agreement as to exploration. The covenant as to royalty was to pay 25 cents per ton for the phosphate when mined and removed, and to pay a minimum of $5.00 per annum, whether the lands were mined or not, to be considered an advance on royalty due for phosphate thereafter mined. The lease contained no surrender clause, strictly so called. But the fact that there was no agreement on the part of the lessee as to exploration, and that it was provided that he might terminate the lease any time he determined that the land did not contain phosphate in paying quantities, would seem to have been treated as the equivalent of such a clause, and the case will be valued as if it did contain it. Nothing was done under the lease by the lessee, except to pay the first year's installment of minimum royalty. Subsequent royalties were tendered, but refused, because of the lessee's failure to begin work under the lease. After the lapse of 3½ years the lessor brought suit to cancel the lease, and it was held that she was entitled to that relief. It was clear that she was entitled to the relief on the ground that all rights under the lease had been forfeited by reason of breach of an implied condition subsequent, to-wit, that work under the lease should be commenced in a reasonable time. It was shown in evidence that at the time the lease was executed the lessor was assured that the work of getting out phosphate would be begun within a year or 18 months. But even if the lessee had 10 years in which to commence work by paying the $5.00 a year royalty, nothing else appearing, under the decision in the case of Monarch Oil & Gas Co. v. Richardson, *supra,* the lessor had the right at any time to call on the lessee to begin work, and, if he did not thereupon promptly do so, his rights under the lease would be forfeited, and this she did when she refused to accept payment of any mini-

mum royalties after the first one. The court held that she was entitled to relief on this ground. It held, also, that she was entitled thereto on the ground that the lease had been obtained by fraudulent representations; and it noted the fact that it had been shown in evidence that the $1.00 consideration was not recited to have been paid, and it was proven that in fact it had not been paid. The court, however, did not stop here. It held that the lease was void for want of mutuality, and that, as it was terminable at the will of the lessee, it was also terminable at the will of the lessor. It advanced the opinion that it was not an executed contract. Through Judge Settle it said: 'We do not concur in the conclusion of appellants' counsel that the contract in question is an executed contract. In our opinion it must be classed as an executory contract merely. Under it nothing had been done; everything required by its terms of appellants was to be thereafter done. All that it required of appellee was that she should furnish the land, and this was done when the lease was executed. On the other hand, what it required of the appellants—payment of the consideration, mining of the land for phosphates, accounting to the appellee for the royalties—was to be thereafter done in fulfillment of the contract. The insignificant $5.00 per year it obligates appellants to pay appellee, whether the land is mined or not, is not of itself sufficient to place the lease in that class of contracts known as executed contracts.'

"The fact that nothing had been done under the lease did not render it executory, no more than the fact that nothing has been done under an ordinary lease renders it executory. But it was said that, whether executed or executory, it was void for want of mutuality. In support of this position—that it was void for want of mutuality—the Frisbie and Young cases were cited. And in support of the position that the lease was terminable at the will of the lessor, because terminable at the will of the lessee, the Brown case from the appellate court of this circuit was cited. The statement heretofore quoted from Judge Lurton's opinion therein to this effect was quoted, and the authorities relied on by him were also cited. These positions were all clearly unsound, as I have heretofore endeavored to show, and it is not necessary that what has been said along this line be repeated here.

"Finally comes the King case. It involved an oil, gas, and mineral lease made June 5, 1902. The consideration therefor was $1.00 recited to have been paid and agreement to pay certain royalties. There seems to have been no provision as to the duration of the rights granted, nor any express agreement as to exploration. It was provided, however, that the lease should be void if one or more wells were not drilled within two years, but not that the drilling could be delayed by the payment of commutation money. The lease contained no surrender clause. Within the two years a well was drilled to the depth of 200 feet and a vein of coal 5 feet thick was found. No further work was thereafter done. Suit was brought August 25, 1914, by the lessor for a cancellation of the lease. It was held that the plaintiff was entitled to the relief sought. There could be no question as to the right of plaintiff thereto, and this on the ground that there was a breach of an implied condition subsequent that if mineral was found it should be produced with reasonable diligence. The excuse given for the delay in production was that it was to the advantage of the lessor as well as the lessees that it be delayed, and that the delay was with his acquiescence and approval. By the latter was meant no more than that the lessor had never demanded or notified the lessee to produce. This, of course, was not sufficient to prevent a forfeiture. There is, therefore, really nothing whatever tending to support defendant's contention in the case. There is nothing in it which he can claim has this tendency, except two statements of the court, through Miller, C. J. One of them is in these words: 'The royalty is the only consideration for the lease.' Point can be made that thereby the payment of the $1.00 was ignored as constituting part of the consideration of the lease. But no more need to have been intended than that the payment of the royalties was the moving cause for making the lease, which is so often expressed in such cases. By the other the reason for the conclusion reached was set forth. It is in these words: 'Such contracts have been held by this court to be unenforceable, on the ground that they are unilateral, and lack mutuality of obligation, which is essential to the validity of contracts.'

"In support of this the Frisbie, Young, and Murray cases, and numerous cases from other jurisdictions, were cited. I have heretofore endeavored to show that such

consideration has no application to such a case, and the
decisions relied on from other jurisdictions do not hold
that it does.   The real and only ground for the decision
was, not that the lease was invalid, but that the rights
granted thereby had been forfeited by the breach of an
implied condition subsequent.   This comes out in a quo-
tation made from the opinion of the Court of Appeals of
Kentucky, to-wit, Eastern Kentucky M. & L. Co. v.
Swann-Day Lumber Co., yet to be considered here.   In-
deed, the case, as I shall presently show, is to a certain
extent, at least, against the defendant's contention.

"This exhausts the consideration of the decisions of
the Court of Appeals of Kentucky relied on by defendant
as supporting his position.   There is nothing, as we have
seen, in the Steinwender and Lowe cases which has any
tendency whatever to support it.   They do not deal with
cases which in any of their aspects are like the case we
have.   This would seem to be true, also of the Litz case;
but possibly it is to be gathered therefrom, that $1.00 is
not sufficient consideration to validate such a contract
as was involved there.   Whether so or not, it is possible,
if not probable, that this is to be gathered from the
Murphy-Thompson Co., Noble and Combs cases, to which
I have called attention.   So far as the Frisbie, Young,
and Murray cases are concerned, there is that in them
which does give occasion for the claim that they are
authorities for the position that such a lease as· we have
here is invalid.   And the King case may be said to have
this tendency, in that it approves the reasoning on which
those cases, so far as they justify such a position, was
based."

The citation reference to other Kentucky cases re-
ferred to in the excerpt may be found in preceding pages
of that opinion.   Following the excerpt the court dis-
cusses the cases of Armitage v. Mt. Sterling Oil and Gas
Company, 25 Ky. L. R. 2262; Bay State Petroleum Co.
v. Penn Lubricating Company, 27 K. L. R. 1133; Flana-
gan v. Marsh, 32 K. L. R. 184; Breckinridge Asphalt
Company v. Richardson, 147 Ky. 834; Eastern Ky. Min-
eral & Timber Company v. Swann-Day Lumber Company,
148 Ky. 82; Schamberg v. Farmer, 18 K. L. R. 513, and
Monarch Oil and Gas Co. v. Richardson, 124 Ky. 602, the
first three of which involved oil and gas leases; the fourth
an asphalt lease, and the fifth a mineral and timber lease;
while the last two involved oil and gas leases, and each

of them contained a surrender clause but notwithstanding which the leases were held to be valid as supported, by not only the expressed monetary consideration but also because of either the express or implied agreement on the part of the lessee to develop the lease for the purposes for which it was executed within the time stipulated if there was an express covenant on that subject, or within a reasonable time under the implied covenant for that purpose.    The monetary consideration in the Schamberg case was also expressed as $1.00, which was acknowledged in the lease, and the drilling provided for was to commence within 12 months with one well completed within two years, or if not done to pay a rental of ten cents per acre for an extension of time.    In the Monarch Oil and Gas Company case the lease was for a term of 20 years and for a well to be commenced within one year after its date ''or pay thereafter an annual rental of $16.00, payable annually.''    In each of the last two cases there were surrender clauses, and each of them was upheld as valid contracts supported by a sufficient consideration.

Since the rendition of those opinions we have held in a great number of cases that the same character of leases as were involved in the last two cases referred to and which two were considered in the Raydure opinion were valid and enforceable, some of which are: Hughes v. Parsons, 183 Ky. 584; Ohio Valley Oil and Gas Company v. Irvine Development Company, 184 Ky. 517; Plumber v. Southern Oil Company, 185 Ky. 243; Sugg v. Williams, 191 Ky. 188; McNutt v. Whitney, 192 Ky. 132, and Hester v. O'Rear, 202 Ky. 176.    In all of the last cited cases there was a surrender clause in the lease and in some, if not all, of them there was only a monetary consideration of $1.00 recited in it, and in each of them the lease was held not to be unilateral because it was supported by a sufficient consideration, and in the O'Rear case it was expressly stated in the opinion that ''it recites a cash consideration of $1.00 and contains an agreement to begin drilling within twelve months or to pay a stipulated rental in advance thereafter until drilling is begun.    The validity of this character of lease has at all times been upheld.''

Other cases sustaining the sufficiency of a $1.00 consideration in such leases (even when it was the sole one), including the validity of the surrender clause without the latter having the effect to render the lease unilateral,

are: Warren Oil and Gas Company v. Gilliam, 182 Ky. 807; Guffey v. Smith, 237 U. S. 101; Allegheny Oil Company v. Snyder, 106 Fed. R. 764; Brewster v. Lanyon Sink Company, 140 Fed. R. 801; Lowther Oil Company v. Guffey, 52 W. Va. 88; Rich v. Donahey (Okla.) 177 Pac. 86, 3 L. R. A. 352; Lovett v. Eastern Oil Company, 68 W. Va. 667, Ann. Cas. 1912B 360. See also the cases of Deming Investment Company v. Lanham (Okla.), 130 Pac. 260, 44 L. R. A. (N. S.) 50, and N. W. Oil & Gas Co. v. Branine, 3 A. L. R. 344, 175 Pac. 533. In the annotations to the Lanham, Lovett, Rich, and Branine cases many others are cited as well as a lengthy list of cases holding that one dollar is a sufficient valuable consideration in any kind of contract, especially if it is executed on one side even where the conveyance of the absolute title to land is made. Among those cases is that of Toncra v. Henderson, 3 Litt. 234, wherein this court held that an express consideration of five shillings was a valuable one and sufficient to sustain a deed conveying the absolute title to land.

In 6 R. C. L. 678, paragraph 85, the universal rule, without exception, upon the subject of adequacy of consideration in contracts generally, is thus stated: "That the adequacy of the consideration is immaterial has been undoubted law ever since the notion of consideration began to be developed. The reason is that the parties are deemed to be the best judges of the bargains entered into. As Hobbes says, the value of all things contracted for is measured by the appetite of the contractors. Accordingly, the courts do not ordinarily go into the question of equality or inequality of considerations, but act upon the presumption that parties capable to contract are capable of regulating the terms of their contracts, granting relief only when the inequality is shown to have risen from mistake, misrepresentation, or fraud." In the next paragraph, on page 679, it is said: "If the rule as to adequacy of consideration is to be adhered to, it would seem that where the thing promised is of an indeterminate value, even a nominal consideration, such as one dollar, would sustain the promise," which is peculiarly applicable to oil and gas rights and privileges, since the thing contracted for (the right to produce oil) is "of an indeterminate value," because no one knows that it may be found after incurring heavy expense, all of which, under leases of this character, must be borne exclusively by the lessee.

If, however, the product should be found in paying quantities, the lessor reaps his royalty without the payment of a copper, and the incurring of that hazard by the lessee is, to our minds, sufficient to supplement the one dollar consideration so as to make it adequate even if it were not so, but which, as we have seen, is untrue.

Independently, however, of any of the foregoing ajudications, or any of the cases cited in them, if the question was one of first impression, we feel that the fundamental principles of the law underlying the making of contracts would force us to hold that a consideration of $1.00 would not relegate such leases to the *nudum pactum* class, since we are unable to find any reason in the law for such a position. One dollar is our unit of value, and since when, may we inquire, did that unit become of no value? It is the well known definition of a consideration sufficient to support a contract that it "consists of anything of *any* value" (Snyder v. Snyder, 193 Ky. 233), and it may consist of money, property, the assumption of any obligation, a benefit conferred or a detriment incurred, or anything that alters the condition of the party to be affected. If that definition be correct, and there is no authority to the contrary, then certainly one dollar is a thing of "any value," and to hold otherwise is a departure from the law as declared from the time it originated among men to the present time. We can perceive of no reason why that ancient and universally followed doctrine should be discarded for the benefit of lessors in oil and gas leases or any other character of contracts. On the contrary, in such leases it would seem that, inasmuch as the lessee incurs all of the hazardous outlay, he should be the one to be favored rather than the other party to the lease who does nothing but cogitate over his contemplated royalties and collects and enjoys them after they come.

Moreover, to so hold we must convert the court into a sort of guardian or *prochein ami* for a class of persons who are *sui juris* under the law, upon the ground that, notwithstanding they may be competent to enter into other classes of contracts, they are incompetent to agree with reference to leases for the production of oil and gas from under their land, and which conclusion the courts must also reach without a particle of evidence to support it. Surely it is not the function of courts to so decree. On the contrary, it is our opinion that it is high time for us

to do our part, if perchance we have been derelict in the past, to maintain the symmetry of the law and to not mar its ancient architectural finish by scarring the edifice in an effort to protect a *sui juris* individual from the possibility that he *may* not be so.

Other considerations aside from the one dollar expressed in the lease are shown to exist in the character of lease here involved, which are pointed out in the authorities referred to, and which cases we will not insert here because of the already great length of this opinion. The confusion of counsel as well as, perhaps, some courts arises from the fact of not distinguishing between a *want of consideration* and *unilateralism*. Wherever there is no consideration the contract fails, but not necessarily so if it is unilateral as to one of the parties, since that feature of the contract as to him may be and most frequently is the very thing for which he contracted and which is true in all optional contracts supported by a consideration.    A number of the cases, *supra,* where the question was involved so held, and we have done so in a number of cases, the two more recent ones being, Montanus v. Buschmeyer, 158 Ky. 53, and Vokins v. McGaughey, 206 Ky. 42, 39 A. L. R., 275 and which cases are also authority for the proposition that where there is sufficient consideration for the lease it supports all of the covenants and agreements contained therein, even though some of them are optional to one of the parties.    In each of those cases a number of others from this court are cited, and which we will not here insert.    One of them is Bacon v. Ky. Central Ry. Company, 95 Ky. 373, in which we said: "It is now well settled that an optional agreement to convey or renew a lease without any covenant or obligation to purchase or to accept, or without any mutuality or remedy will be enforced in equity, if it is made on proper consideration or forms part of a lease or another contract between the parties that may be in true consideration for it. In this case the agreement was executed at the same time with the lease and was a part of the same transaction, and must for this purpose be treated as if part of the lease . . . We must conclude that each and every stipulation on the part of one of the contracting parties is supported by and induced by each and every stipulation on the part of the other." In the Vokins case we said: "The rule seems to be, that where an option to do a particular thing is given to one

of the parties to a contract, *if supported by a sufficient consideration,* it is enforceable, and it is not then lacking in mutuality or invalid on the ground that it is unilateral, since the other party has been paid to extend that right; and we know, as a matter of current history, as is confirmed by cases constantly appearing in this court, that such contracts are upheld, and which is convincingly illustrated by the great number of mineral leases containing similar clauses, wherein options were enforced." The opinion then cites 6 R. C. L. 687, section 94, and 13 C. J. 336, paragraph 183, and inserts the text from both those publications in support of the excerpt from the opinion. There being a consideration for the lease in this case, as we have found, it necessarily follows that it was not unilateral or void for want of mutuality.

The next question for consideration is whether an "unless" lease of the kind we are considering is sustainable by the same considerations as an "or" lease, and if so, to what extent? The authorities are abundant and without contradiction that the only difference between the two characters of leases is that in the former (unless lease) the same privileges are conveyed or transferred to the lessee as is done by an "or" lease, with this difference, that in an "unless" lease the lessee forfeits it *ipso facto* by not paying the stipulated rent at the expiration of the contractual period within which he agrees to develop, or at the expiration of a reasonable time in which he is compelled to develop under the implied covenant which the law reads into such leases in the absence of an expressed one. The Raydure, Guffey and Rich opinions, *supra;* McKee v. Colwell, 7 Pa. Sup. C. T. 607; Glasgow v. Chartiers Oil Company, 152 Pa. 48; Frank Oil Company v. Bellevue Gas & Oil Company, 29 Okla. 719, 43 L. R. A. (N. S.) 487; VanEtten v. Kelley, 66 Ohio St. 605; Brooks v. Kunkle, 24 Ind. App. 624; Butcher v. Green, 98 N. E. Ind. 876; Dill v. Fraze, 167 Ind. 53, and Ziegler v. Hopkins, 259 Fed. R. 467, and 259 Fed. R. 43. There is no dissent from the conclusion that in all leases where there is a legal consideration it is sufficient to support all of the stipulations in the lease, whether they be optional or not on the part of the lessee, and that when the latter in such a lease obtains the right at his option to extend the time for development under the "unless" clause he may do so by paying the stipulated rent on or before the time it is due and thereby extend his right to

explore for the period covered by the paid rentals. However, the right to make such payments might be destroyed by notice from the lessor for development in lieu of rentals, as we have held in a number of cases. In the "or" lease the lessee incurs the obligation to pay past due rent accruing before the time he exercises his privilege under the surrender clause and for which the lessor may sue him and recover it; but the lessee incurs no such obligation under an "unless" lease, since upon his failure to pay within or at the time stipulated his lease becomes forfeited and all rights he has thereunder are terminated. That such "unless" leases should be so construed is not only shown by the cases referred to, but from the very nature of an option which, as we have seen, is necessarily unilateral as to the lessee, since the privilege he purchased with his consideration was the right on his part to do or not to do, at his pleasure.

But it is insisted that there was no proof in this case that appellant paid his lessor any rental under his option given him by the "unless" clause in its lease, and because of that fact it should be adjudged as forfeited from and after the fixed period within which the lessee agreed to commence drilling or operation, and in support of that contention there is cited the Schamberg case, *supra,* and Oil Fork Development Company v. Huddleston, 202 Ky. 261. But we do not think the rules of practice announced in those cases apply to the procedure adopted here. In the Schamberg case the defendant attempted to avoid judgment for the amount of the unpaid purchase money for land on the ground that there was an existing encumbrance on it which operated as a breach of the warrant of title. That defense was denied, and it appeared in the case that an oil and gas lease had been placed upon the land prior to defendant's purchasing it, but the time stipulated for development had long since expired and defendant neither alleged nor proved that the lessee in that lease had kept it alive by paying the stipulated rentals upon failure to develop. The court held that the burden was on him to do so, and having failed he did not establish his defense. Manifestly, defendant was called upon in that case to prove his defense as set forth in his answer, which was that the encumbrance of which he complained was a valid and existing one and he did not discharge that burden without showing that everything had been done that was neces-

sary to keep the lease alive so that it would be an existing encumbrance as he had alleged.

The Huddleston case was an action by the lessor to forfeit the lease because there had been no drilling within the time stipulated, nor had defendant exercised its privilege of renewal. The answer did not deny either of those allegations, and because it failed to do so we held that it was insufficient.

An entirely different presentation of the question is made in this case, which pended in the circuit court for more than a year after it was filed. The original petition and all of its amendments up to the filing of the last one immediately before submission, acknowledge the validity of appellant's lease, and that it was the owner of at least one-half of the products under the tract of land covered by the lease and that appellees were the owners of the other one-half. In the last amendment, filed at the time indicated, appellees for the first time took the position that appellant acquired nothing under its lease upon the sole ground alleged therein, and which we have inserted under contention (b), *supra*. There was no contention made in any of appellee's pleadings that the lease of appellant became forfeited by any broken condition subsequent, but only that it was void *ab initio*. It thereby selected its ground of attack and it should be confined to that ground alone. To hold otherwise would enable appellees not only to take advantage of an alleged defect in appellant's lease that it never made in either its pleadings or proof, but also enable it to so practice its case in a manner to deceive appellants as to the point of attack that it would make on its lease. We, therefore, conclude that appellant's lease was valid to the extent of conveying the leasehold rights in and to one-half of the undivided tract of land, which leaves for consideration the correctness of the judgment in ordering the property sold for the purposes of division.

We have held that where real property is owned by tenants in common, either or both may enter and develop the minerals on any part thereof by each respecting the prior location of the other and accounting to him for the net production, and have also applied the same principle to their respective lessees. York v. Warren Oil & Gas Company, 191 Ky. 157. In other words, a partition is unnecessary to prevent waste, as there may be an equitable accounting between the tenants; but it is not inti-

mated in that opinion that there may not be a partition
of the property if either of the joint owners desires it.

Further, in considering the practicability of this
character of development it is well to bear in mind that
when minerals are *bona fide* extracted from the land by
a cotenant he must account to the other tenant for the
value of the minerals so removed, less the cost of produc-
tion. New Domain Oil & Gas v. McKenny 188 Ky. 183.

In view of the fact that there is no development on
this tract of land it may well be doubted if an operator
would incur the expense of drilling, and take the risk of
securing production, for one-half of the oil produced after
the payment of royalties and expenses.

Consistent with the above principles we have also
held that oil and gas leases are to be considered real prop-
erty. Rader v. Shaffer, 186 Ky. 802; Wolfe County v.
Beckett, 127 Ky. 253; Beckett-Iseman Oil Co. v. Backer,
165 Ky. 818; Kash v. U. S. Star Oil Co., 192 Ky. 433;
Lowther v. Scherich, 195 Ky. 177. Such property is gen-
erally held to be subject to partition, the rule being:

"Every species of real property may be the sub-
ject of compulsory partition. Hence, partition may
be made of a house or manor, or of mines or mining
claims, or of lands upon which quarries exist and are
operated, or of mill sites and of waters or a mill dam
and waters. While doubtless a cotenant of the right
to take oil and gas from beneath a tract of land may
compel partition of his right, such partition should
be by a sale, and it had been held that a partition by
metes and bounds is void." 30 Cyc. 173.

The above rule has been generally followed in this
court, but it has been denied in a case where "The owner
of an undivided interest in and to the minerals, gases,
&c., underlying a certain tract of land in an action against
infants who own the remaining interest in said minerals,
gases, &c., as well as a like interest in the entire fee
sought a sale of all minerals, gases, &c., on the ground of
their indivisibility. Scott, &c. v. Pond Creek Coal Co.,
152 Ky. 67, on the authority of Ball v. Clark, *supra.*

This holding was based on the proposition that all
of the minerals in the land had not been severed from the
surface ownership. But as to cases where such sever-
ance had been made, it was said in the former opinion:

"Likewise it may be considered to be settled
that an estate in such minerals is the subject of par-

tition. Freeman on Co-tenancy and Partition, section 435; Canfield & Chapman v. Ford, 28 Barb. 336; Hughes v. Devlin, 23 Cal. 505; White on Mines and Mining Remedies, section 591; Aspen Mining and Smelting Co. v. Rucker, et al. (U. S. C. C. Dist. of Col.), 28 Fed. 220; McConnell v. Peirce, 210 Ill. 627. A sale because of indivisibility under our statute is but a method or means of partition and the same general rules apply. If, therefore, the entire rights of the species named had been acquired by the appellant Clark and some co-owner with him in such a way as that of the rights of no owner of any other estate or parcel or part of the same tract of land were involved, he would have as against such co-owner his right of partition or of sale, if the property were indivisible.''

Here all the mineral rights are severed from the surface and are owned by tenants in common, and the reasoning in the Ball case as well as the rule therein laid down are directly applicable and of controlling force.

The tract of land is rectangular and there is proof that there are gas wells near one of the longitudinal sides and oil wells on land adjacent to the opposite side, and that a central division line across the short way will leave an equal number of acres with equal advantages in each tract, and that each should be of equal value. It is further pointed out that the surface owners are willing to make such partition, and it is strongly insisted that the minerals should be divided in specie by such surface partition.

This is a difficult question. True, oil and gas leases are interests in real estate and assignments of such are controlled by the laws regulating the sale of real estate. But even though a part of the realty they are different from the solid minerals in that there is no way to ascertain their location, extent or value. They are fugitives hidden from observation and their very existence may not be determined except by actual drilling. While this land is undeveloped and the parties stand at arm's length, it must be borne in mind that each of the cotenants has a valid lease to an individual moiety of the whole tract. Oil may underlie all or any part or none of it, and a compulsory partition of such mineral rights by laying off sections on the surface is but an exchange of properties ''sight unseen'' and, however fairly conducted, bears

more resemblance to a speculative enterprise than it does to an equitable division.

This does not deny partition; it is merely a holding that under the facts of this case the property is indivisible and that for that reason it should be sold and the proceeds divided.

As said in Ball v. Clark, "A sale because of indivisibility under our statute is but a method or means of partition, and the same general rules apply."

No complaint is made as to the order of court fixing the *pro rata* of the royalties to be paid; thus the purchaser will know in advance the extent of his obligations and his rights, so that all in all a fair and practicable adjustment of the matters involved is thus afforded.

Wherefore, the former opinion is withdrawn and substituted by this one affirming the judgment on both the original and cross appeals, and the petition for rehearing is overruled.

Whole court sitting.